SLIP OPINION

Cite as 2014 Ark. 89

# SUPREME COURT OF ARKANSAS

No. CV-12-75

| | |
|---|---|
| MATTHEW L. EDMISTEN<br>APPELLEE | **Opinion Delivered** February 27, 2014 |
| V. | APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION [NO. 711606] |
| BULL SHOALS LANDING AND AIG<br>DOMESTIC CLAIMS, INC.<br>APPELLEES | <u>REVERSED AND REMANDED;<br>COURT OF APPEALS' OPINION<br>VACATED</u>. |

**JIM HANNAH, Chief Justice**

Appellant Matthew Edmisten appeals from an order of the Arkansas Workers' Compensation Commission affirming and adopting the opinion of the administrative law judge (ALJ) and denying his claim for benefits associated with an injury he received during his employment with appellee Bull Shoals Landing.[1] On November 1, 2007, Edmisten and Greg Prock were injured at work while Edmisten was holding the lid of a fifty-five-gallon drum as Prock opened the drum with an acetylene torch; the drum exploded, severely burning both Edmisten and Prock. Edmisten and Prock were taken to the hospital, where they both tested positive for marijuana. The Commission denied Edmisten's claim for benefits based on a finding that Edmisten tested positive for illegal drugs after the accident and that he failed to rebut the statutory presumption that the accident was substantially

---

[1]This appeal is a companion case to *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, ___ S.W.3d ___, decided this same date.

occasioned by his drug use. Edmisten originally appealed the Commission's decision to the court of appeals, which affirmed. *See Edmisten v. Bull Shoals Landing*, 2012 Ark. App. 44, 388 S.W.3d 416. Edmisten then petitioned this court for review, which we granted. Upon granting a petition for review, this court considers the appeal as though it had been originally filed in this court. *See, e.g., Pack v. Little Rock Convention Ctr. & Visitors Bureau*, 2013 Ark. 186, at 2, ___ S.W.3d ___, ___. On appeal, Edmisten contends that the Commission's decision is not supported by substantial evidence. He also contends that the structure of the Commission is unconstitutional because the "decisional independence" of the administrative law judges and the Commission has been infringed upon by both the executive branch of the State of Arkansas and private interests to the point of actual bias, as well as the appearance of bias, thus violating the separation-of-powers doctrine and his procedural and substantive due-process rights. We reverse and remand the Commission's decision and vacate the court of appeals' opinion.

On September 2, 2009, a hearing was held before the ALJ on Edmisten's claim for benefits. The parties stipulated that the testimony given by Edmisten, Prock, Roger Williams, Mike Didway, Steve Eastwold, and Greg Aaron in Prock's hearing should be admitted at Edmisten's hearing and accorded due weight. This testimony is set forth in *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, ___ S.W.3d ___. These witnesses offered additional testimony at Edmisten's hearing.

Greg Prock, who worked as a welder at Bull Shoals, testified that on the morning of November 1, 2007, he had coffee with Edmisten and Mike Didway at around 8:00 a.m. in

SLIP OPINION

an office by the main dock. Prock stated that, when he left the dock area, he encountered his boss, Steve Eastwold, who asked him and Edmisten to get a couple of barrels and cut the tops off them. Prock testified that he selected two barrels after tilting them to determine that nothing was inside them and then threw the barrels to Edmisten. Prock used an acetylene torch to cut the tops off the barrels, and Edmisten assisted him by holding the tops of the barrels with channel locks. Prock testified that he cut the top off the first barrel without incident, but when he began cutting the second barrel, it exploded and he and Edmisten were engulfed in flames. Prock testified that he had used acetylene torches to open the barrels at least fifteen to twenty times before the explosion and that neither Eastwold nor anyone else had ever objected to his opening the barrels that way.

Prock stated that he had never seen Edmisten come to work intoxicated and that Edmisten did not appear intoxicated on the morning of the accident. Prock admitted that he smoked pot three or four times per week after work, but he denied ever smoking it with Edmisten. Prock also denied that he and Edmisten had left the dock that day before the accident to smoke marijuana. Prock testified that Eastwold had never given him instructions about how to remove the tops of the barrels and that he did not learn that Eastwold objected to his using a torch until he was deposed for his case. He also testified that he was not aware that an air chisel was available at Bull Shoals to use for cutting barrels until Eastwold brought an air chisel to a hearing in his case. Prock admitted that he did not take the caps off the barrels prior to cutting them because he did not hear any "sloshing" when he picked them up and thought they were empty. He testified that he did not read the warning labels on the

3

barrels before cutting them with the torch and that neither he nor Edmisten wore any safety equipment while cutting the barrels. Prock testified that, in his current job at Guy King, he had been asked to cut the tops off barrels with a cutting torch. Prock stated:

> And I told them what happened with me before, and that's when I said, I ain't doing that. And I talked to my father-in-law over the phone, and he said, if you'll fill that thing full of water, all the way full of water—he's been a boilermaker for 30 some years—if you'll fill that barrel all the way up, he says, there ain't no way that any fumes could ever be in there by the water pushing the fumes out of the barrel. And that's how I ended up cutting them for, with a torch for Guy King.

Mike Didway, a coworker of Edmisten's and Prock's, testified that, when he saw both men on the morning of the accident, neither of them appeared to be intoxicated. On cross-examination, Didway stated that, although he had seen the two around 7:00 a.m. that morning, he did not see Edmisten again that day until after the explosion, and he had no idea what Edmisten had done in the time before the explosion occurred around 9:30 a.m. Didway stated that he and another employee were out on the water when the accident occurred, and he saw that the explosion engulfed a houseboat nearby. Didway testified that he had seen Prock open barrels with a cutting torch on two or three occasions. He also testified that he had never heard Eastwold tell Prock or Edmisten how to open the barrels.

Roger Williams, a mechanic at Bull Shoals, testified that he was on the lake with Didway at the time of the explosion. Williams stated that he had not seen Edmisten or Prock prior to the explosion and that he had no idea what Edmisten was doing between the time he arrived at work and the time the explosion occurred. Williams testified that he did not recall Edmisten ever coming to work intoxicated, and he testified that he had never seen Prock open a barrel with a cutting torch. He also testified that he could not recall whether



he had ever heard anyone tell Prock how to open barrels.

Gail Hostad testified that she lived by Edmisten's girlfriend and that Edmisten had not appeared intoxicated during the evenings that he came to his girlfriend's house. She also testified that she had no idea what Edmisten did on the morning of the explosion.

Edmisten testified that he was not intoxicated on the morning of the accident and that he had not ingested any illegal drug that day. Edmisten testified that he had helped Prock cut the tops out of barrels maybe ten or fifteen times before that day. Edmisten said that on the morning of the accident, as he and Prock were leaving the dock office, they saw Eastwold, who told them to cut some tops. Edmisten stated that when he loaded the barrels into the truck, he did not feel or hear any sloshing. He said that they cut the top off the first barrel without any problem and that they were seven to ten inches into the second barrel when it exploded. Edmisten testified that Eastwold never told them how to cut open a barrel, that he had never seen or heard anyone get reprimanded for cutting the top off a barrel, and that he did not learn until his deposition that Eastwold disapproved of using a cutting torch on a barrel.

Edmisten testified that he was released to return to work on December 11, 2007, and about a month later, he asked Eastwold if he could return to work. After passing a drug test, Edmisten returned to work for Eastwold and worked for him about a month before leaving to take another job setting up a hardware store. Edmisten testified that he worked at the hardware store until the owner, Jeff Schlote, told him that he needed to take a drug test from Walmart. Edmisten stated that he told Schlote he wanted to take a drug test at a doctor's

office, and when Schlote refused his request, he quit.

Edmisten denied that Eastwold specifically told him and Prock to uncap the barrels and check them before cutting them, and he denied that Eastwold told them that the proper way to take a top out of a barrel is to use a pneumatic air chisel. When shown an air chisel at the hearing, Edmisten testified that he had never seen that tool before. Edmisten denied that he was in Prock's vehicle on the morning of the accident. He testified that he might have smoked marijuana "once or twice" around the time of the accident. Edmisten did not recall stating in his deposition that he had smoked pot in high school about once a year, and he admitted that it was not true that he smoked pot only once in his entire life. Edmisten testified that he and Prock were friends, but he denied knowing that Prock smoked marijuana. He also denied telling both Eastwold and Schlote that he could not pass a drug test.

Greg Aaron, another coworker at Bull Shoals, testified that he was present when Eastwold showed Prock and Edmisten how to remove a barrel top with an air chisel. Aaron stated that on a couple of occasions when Eastwold was not present, he had observed people using a cutting torch to open barrels. He also stated that he had never heard Eastwold tell Prock and Edmisten that it was acceptable for them to use an acetylene torch to cut a barrel.

Jeff Schlote testified that Edmisten's employment with him ended when Edmisten refused to take a drug test. According to Schlote, when he asked Edmisten why he would not take the test, Edmisten told him that he was "dirty."

Steve Eastwold testified that on November 1, 2007, Edmisten clocked in at

approximately 6:30 a.m., Prock arrived at approximately 7:30 a.m., and the accident occurred some time after 9:30 a.m. Eastwold said that when he first saw Edmisten and Prock that day, they were coming down the hill in Prock's vehicle, with Prock driving and Edmisten in the passenger seat. Eastwold said that he asked "if they would go to the top of the hill, get a couple of those barrels up there, bring them back down to the shop, take the bung holes out of them, make sure they're clean, and take the tops off." Eastwold testified that, in the past, he had specifically told Edmisten and Prock to use an air chisel to cut the tops. He also testified that Prock had an air chisel in his toolbox. Eastwold denied that he had ever told Edmisten and Prock to use an acetylene torch to cut the tops, and he stated that he had no knowledge before the explosion that they had been using a torch for that purpose.

Eastwold testified that when he stopped Prock's vehicle that morning, Edmisten and Prock would not look at him. He related that he did not get close enough to see the whites of their eyes or to smell the inside of the vehicle. When asked if he thought Edmisten and Prock were intoxicated on the day of the accident, Eastwold said that he did not know because he "did not pay any attention to them." Eastwold testified that if the two had appeared intoxicated that day, he would not have allowed them to work.

Eastwold said that when he visited Edmisten at the hospital following the accident, Edmisten told him that he did not know how he was going to pay for his medical bills, that he was not going to be able to pass the drug test, and that workers' compensation probably would not cover his bills. According to Eastwold, approximately thirty days after he had been released from the hospital, Edmisten called him to ask about returning to work. Eastwold said

7

that he told Edmisten he would have to pass a drug test before coming back to work and that Edmisten told him he could not pass a drug test that day and would rather take it after the first of the year when he was sure he could pass it.

The ALJ concluded that Edmisten had failed to rebut the presumption by a preponderance of the evidence that his accident was substantially occasioned by the use of marijuana. The ALJ credited the testimony of Eastwold and Aaron that Edmisten and Prock had been instructed to use an air chisel to cut the tops from the barrels. With respect to Prock's testimony that it was his habit to use cutting torches on barrels, the ALJ cited the decision in Prock's workers-compensation case, where the Commission stated:

> We are not persuaded by [Prock's] testimony that he always used a torch to remove the tops off the barrels as evidence that his marijuana use did not contribute to his injury. On the contrary, this evidence supports the fact of [Prock's] admitted long-term marijuana use and his lack of personal safety.

The ALJ stated:

> Similarly, as the majority of the Full Commission found [in Prock's case], his testimony that they had used a torch for this purpose numerous times before, a clearly dangerous method, actually lends support to the position that they were operating under impaired judgment.

The ALJ considered Didway's testimony, finding that his

> testimony corroborates that of Prock and Edmisten to the extent that he confirmed that the three drank coffee together at the start of the work day on November 1, 2007. . . I find that even if Edmisten did not appear to be impaired at that point in the day, it is irrelevant. Prock and Edmisten admitted that they did no work prior to going to retrieve the barrels. According to Eastwold and Didway, the explosion occurred at around 9:30 a.m. What accounts for the gap in time from when the coffee-drinking ended and the explosion occurred? Certainly the entire barrel-retrieving and cutting process, per the evidence before me, did not take 90 minutes. The answer is found in the credited testimony of Eastwold that he encountered Prock and Edmisten in Prock's vehicle, coming from the main road off the premises, at

8

which point he asked them to cut the barrels. His testimony was that neither Edmisten or Prock would look him in the eye. He was not close enough to assess whether they appeared to be under the influence of marijuana. Didway confirmed that Prock had cut barrels open with a cutting torch previously. However, he stated that he would not have used this method. He did not see Eastwold on the dock at the point in time in which, according to Prock and Edmisten, he was supposed to be asking them to cut barrels. This further undercuts the testimony of Edmisten and Prock.

Finally, the ALJ found that Eastwold was more credible than Edmisten and Prock concerning what had transpired the morning of the explosion, that there was a direct causal link between Edmisten's marijuana use and the explosion, and that Edmisten had failed to rebut the presumption that the accident was not substantially occasioned by his use of marijuana. The Commission approved and adopted the findings of the ALJ in a 2–1 opinion. The dissenting Commissioner would have found that Edmisten's injury was compensable, stating:

> The only evidence of intoxication in this claim is the positive drug test. Prock testified that Edmisten was not intoxicated. Edmisten testified that Prock was not intoxicated. But as they are the two people being accused of being high, their denials really carry very little weight. . . . However, Didway testified that he saw Edmisten and Prock that morning and they did not appear intoxicated. Their boss, Eastwold, also an interested party, while insinuating that Edmisten had been off smoking pot in Prock's Cherokee, admitted that if he had thought they were intoxicated when he instructed them to cut the barrels he would not have let them work. Therefore, the evidence of record preponderates in favor of a finding that Edmisten was not intoxicated.
>
> The evidence of record shows that Prock cut open oil barrels with an acetylene torch *all the time*. Prock testified that is how he always did it. Didway testified that he had seen Prock do it that way before. Aaron testified that he had seen Prock cut open oil barrels with an acetylene torch before. So even if Edmisten and Prock were intoxicated, a finding I specifically do not make, it cannot be said that the incident was substantially occasioned by the use of marijuana. The accident was substantially caused by Prock's habit of cutting open oil barrels with an acetylene torch. . . . Although the testimony of Didway and Eastwold establishes that Edmisten and Prock were not intoxicated at the time of the incident, this is really beside the point, as the

incident was not substantially occasioned by the use of marijuana. It was substantially occasioned by Prock's stupid habit of cutting open oil barrels with an acetylene torch. As such, the bar presented by Ark. Code Ann. § 11-9-102(B)(iv) does not apply to this claim.

(Emphasis in original.)

Edmisten contends on appeal that the Commission's decision is not supported by substantial evidence. He states that the Commission erroneously rested its decision on "complete speculation" that the accident was substantially occasioned by his use of marijuana because there was no testimony from any witness that he was intoxicated or impaired before the explosion.

An injury is not compensable if the injury or accident was substantially occasioned by the use of illegal drugs. *See* Ark. Code Ann. § 11-9-102(4)(B)(iv)*(a)* (Repl. 2012); *see also ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 71, 977 S.W.2d 212, 216 (1998) (explaining that "substantially occasioned" means that there must be a direct causal link between the use of alcohol [or illegal drugs] and the injury or accident). The presence of illegal drugs shall create a rebuttable presumption that the injury or accident was substantially occasioned by the use of illegal drugs. *See id.* § 11-9-102(4)(B)(iv)*(b)*. An employee shall not be entitled to compensation unless it is proved by a preponderance of the evidence that the illegal drugs did not substantially occasion the injury or accident. *See id.* § 11-9-102(4)(B)(iv)*(d)*. The question of whether an employee has overcome the presumption is a question of fact for the Commission. *E.g.*, *Ester v. Nat'l Home Ctrs., Inc.*, 335 Ark. 356, 364, 981 S.W.2d 91, 95 (1998). When the Commission denies coverage because the claimant failed to meet his burden of proof, the substantial-evidence standard of review requires that

we affirm the Commission's decision if its opinion displays a substantial basis for denial of relief. *E.g.*, *Hickman v. Kellogg, Brown & Root*, 372 Ark. 501, 506, 277 S.W.3d 591, 596 (2008). Substantial evidence exists only if reasonable minds could have reached the same conclusion without resort to speculation or conjecture. *See, e.g.*, *Pickens-Bond Constr. Co. v. Case*, 266 Ark. 323, 330, 584 S.W.2d 21, 25 (1979). This court will not reverse the Commission's decision unless we are convinced that fair–minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *E.g.*, *Hudak-Lee v. Baxter Cnty. Reg'l Hosp.*, 2011 Ark. 31, at 5, 378 S.W.3d 77, 80. Generally, the appellate court reviews only the decision of the Commission; however, when the Commission affirms and adopts the ALJ's findings, as it did in this case, we considers both the ALJ's decision and the Commission's decision. *E.g.*, *Ozark Natural Food v. Pierson*, 2012 Ark. App. 133, at 9, 389 S.W.3d 105, 110.

In this case, medical testing established the presence of marijuana metabolites, which triggered the statutory presumption that the injury or accident was substantially occasioned by the use of illegal drugs. *See* Ark. Code Ann. § 11-9-102(4)(B)(iv)*(b)*.[2] This shifted the burden of proof to Edmisten to prove by a preponderance of the evidence that the injury or accident was *not* substantially occasioned by his use of illegal drugs. Ark. Code Ann. § 11-9-102(4)(B)(iv)*(d)*.

---

[2]Edmisten also tested positive for morphine, but the ALJ found that no presumption applied to that drug because medical records showed that Edmisten was given morphine for his pain upon admission to Baxter Regional Hospital after the explosion but prior to the administration of the drug test.

In finding that Edmisten failed to rebut the presumption that the explosion and resulting injury were substantially occasioned by his use of marijuana, the ALJ focused on the credibility of Edmisten's and Prock's testimony that they did not use marijuana that day and their inconsistent testimony regarding the frequency of their marijuana use. The ALJ specifically stated that it found Eastwold to be more credible than Edmisten and Prock concerning what had transpired the morning of the explosion. But Eastwold testified that he did not know whether Edmisten and Prock were intoxicated that morning because he "did not pay any attention to them" when he told them to cut the barrels. Moreover, Didway testified that he had never seen Edmisten intoxicated at work. That Edmisten might have been dishonest about his drug use does not answer the question of causation. Even assuming that Edmisten used marijuana on the morning of the accident, it does not *automatically* follow that, but for his drug use, the accident would not have occurred. Indeed, Bull Shoals is entitled to the *presumption* that the accident was caused by drug use, but that presumption is rebuttable. In this case, the question before the Commission was whether Edmisten proved, by a preponderance of the evidence, that there was not a direct causal link between his marijuana use and the accident or injury.

Preponderance of the evidence means evidence of greater convincing force and implies an overbalancing in weight. *Titan Oil & Gas, Inc. v. Shipley*, 257 Ark. 278, 298, 517 S.W.2d 210, 222–23 (1974)(citing *Smith v. Magnet Cove Barium Corp.*, 212 Ark. 491, 206 S.W.2d 442 (1947)). A preponderance of the evidence is "not necessarily established by the greater number of witnesses testifying to a fact but by evidence that has the most convincing



force; superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other." *Black's Law Dictionary* 1301 (9th ed. 2009).

The evidence presented by Edmisten to rebut the presumption of a direct causal link between his drug use and the accident is as follows. Edmisten testified that he was not intoxicated on the day of the accident and that he had helped Prock cut the tops out of barrels maybe ten or fifteen times before the accident. He also testified that he had never been told how to cut open a barrel. Prock testified that he had never seen Edmisten come to work intoxicated and that Edmisten did not appear intoxicated on the morning of the accident. He also testified that Eastwold had never given him instructions about how to remove the barrel tops and that he had used acetylene torches to open the barrels at least fifteen to twenty times before the explosion, without incident. Prock also testified that, after the accident, he learned from his father-in-law, a boilermaker, to fill barrels with water before cutting them. Didway testified that he saw Edmisten and Prock on the morning of the accident and that neither man appeared to be intoxicated. He also testified that he had seen Prock open barrels with a cutting torch on two or three occasions and that he had never heard Eastwold tell Prock or Edmisten how to open barrels. Williams testified that he did not recall ever seeing Edmisten intoxicated at work, and Aaron testified that, when Eastwold was not present, he had observed workers using cutting torches to open barrels. In sum, Edmisten presented evidence that no one saw him impaired as a result of drug intoxication on the day of the accident and that it was Prock's habit, as a welder for Bull Shoals, to open barrels with

a cutting torch. Aside from the positive drug test—from which Bull Shoals had already received the benefit of the presumption—the only other "evidence" of impairment that day was Eastwold's testimony that Edmisten and Prock were in Prock's vehicle when he told them to cut the barrels and that the two would not look at him.

It is true that appellate courts defer to the Commission on issues involving the weight of evidence and the credibility of witnesses. *E.g.*, *Freeman v. Con-Agra Frozen Foods*, 344 Ark. 296, 305, 40 S.W.3d 760, 767 (2001). However, while the Commission may be insulated to a certain degree, it is not so insulated as to render appellate review meaningless. *Id.*, 40 S.W.3d at 767. The Commission may not arbitrarily disregard the testimony of any witness and, likewise, the Commission may not arbitrarily disregard other evidence submitted in support of a claim. *Id.*, 40 S.W.3d at 767.

In this case, the Commission arbitrarily disregarded testimony submitted in support of Edmisten's claim. The Commission apparently found credible Prock's testimony that on numerous occasions prior to the accident, he had used a cutting torch to open a barrel. But the Commission rejected this "habit" testimony as evidence that the accident was not substantially occasioned by drug use, essentially concluding that Prock's testimony instead supported the proposition that Prock has a longtime history of "operating under impaired judgment." The Commission made this finding despite the fact that no witness testified that Edmisten or Prock had ever been intoxicated at work.

In addition, we are troubled by the ALJ's mischaracterization of Didway's testimony. The ALJ found that

Didway confirmed that Prock had cut barrels open with a cutting torch previously. However, he stated that he would not have used that method. He did not see Eastwold on the dock at the point in time which, according to Prock and Edmisten, he was supposed to be asking them to cut barrels. This further undercuts the testimony of Edmisten and Prock.

These findings are disingenuous. Didway stated that he would not have used a torch, and the implication is that he would have refrained from doing so for safety reasons. But Didway testified that he would not use an acetylene torch to open a barrel because *he did not know how to operate one*. As for Didway's testimony regarding whether he saw Eastwold speaking to Edmisten and Prock on the dock, Didway could not recall whether he saw Eastwold, stating, "I do not remember if I saw him." In no way did Didway's actual testimony undercut the testimony of Edmisten and Prock.

We conclude that the Commission's decision that Edmisten failed to rebut the presumption that his accident was not substantially occasioned by the use of illegal drugs is not supported by substantial evidence. We are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. Accordingly, we reverse the decision of the Commission and remand for a determination of benefits.

Edmisten raises an additional point on appeal in which he alleges that the structure of the Commission is unconstitutional because the "decisional independence" of the ALJs and the Commission has been infringed upon by both the executive branch of the State of Arkansas and private interests to the point of actual bias, as well as the appearance of bias, thus violating the separation-of-powers doctrine and his procedural and substantive due-

15

SLIP OPINION

process rights. Because we reverse and remand on Edmisten's first point on appeal, we do not reach the second point. This court has made clear that it will not address a constitutional question if it can resolve the case without doing so. *E.g.*, *Dotson v. City of Lowell*, 375 Ark. 89, 95, 289 S.W.3d 55, 60 (2008).

Reversed and remanded; court of appeals' opinion vacated.

Special Justices JUDSON KIDD and TJUANA BYRD join in this opinion.

BAKER and GOODSON, JJ., dissent.

HART and HOOFMAN, JJ., not participating.

**KAREN R. BAKER, Justice, dissenting.** I dissent from the majority opinion for the same reasons stated in my dissent in *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 89, ___ S.W.3d ___ (Baker, J., dissenting).

GOODSON, J., joins.

**COURTNEY HUDSON GOODSON, Justice, dissenting.** I dissent in this case for much the same reasons that I dissent in the companion case of *Prock v. Bull Shoals Landing*, 2014 Ark. 89, ___ S.W.3d ___ (Goodson, J., dissenting). As in *Prock*, the majority disregards the standard of review and, specifically in this case, misconstrues the statutory presumption.

By statute, it is presumed that the accident was substantially occasioned by the use of marijuana, given Edmisten's positive test for that substance. Ark. Code Ann. § 11-9-102(4)(B)(iv)(*b*) (Repl. 2012). Therefore, it was not necessary for there to be proof that anyone saw Edmisten in an intoxicated state on the day of the accident. Instead, the burden was squarely on Edmisten to rebut the presumption by proving by a preponderance of the

SLIP OPINION

evidence that the accident was not substantially occasioned by the use of marijuana. Ark. Code Ann. 11-9-102(4)(B)(iv)(*d*). On appeal, this court is not concerned with the preponderance-of-the-evidence standard of proof that Edmisten shouldered below. Whether the rebuttable presumption is overcome by the evidence is a question of fact for the Commission to determine. *ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998). Therefore, the only question on appeal is whether there is substantial evidence to support the Commission's decision that Edmisten failed in his burden of rebutting the presumption. *See Ester v. Nat'l Home Ctrs., Inc.*, 335 Ark. 356, 981 S.W.2d 91 (1998).

The testimony in this case was conflicting at every turn, and the Commission resolved those conflicts against Edmisten, finding in particular that his testimony denying marijuana use on the day of the accident was not worthy of belief. It is most certainly not an arbitrary disregard of testimony for the Commission to discount the testimony of co-workers that Edmisten was not known to be under the influence of marijuana at work. The critical issue was whether Edmisten was so affected on the date and at the time of the accident. No co-worker observed Edmisten just before the accident occurred, other than Prock, who also tested positive for marijuana and whose testimony the Commission refused to believe. As such, the Commission was not required to give weight to the co-workers' testimony.

The Commission in this case weighed the testimony offered by Edmisten to establish that he was not under the influence of marijuana and the testimony that Prock routinely used an acetylene torch to open barrels against the test result showing the presence of marijuana in Edmisten's body. The Commission also gave credence to Steve Eastwold's testimony that

Edmisten and Prock were riding in Prock's personal vehicle and coming from an area where no work activities took place approximately one hour before the explosion. Based on the evidence, the Commission could find that using an acetylene torch to open a barrel, without sufficiently checking its contents and without venting the barrel, was evidence of carelessness and thus impairment. Consequently, the Commission's finding that Edmisten failed to rebut the statutory presumption is supported by substantial evidence. Under the law, this court should affirm the Commission's decision.

BAKER, J., joins.

*Spencer Law Firm*, by: *Frederick S. "Rick" Spencer*, for appellant.

*Worley, Wood & Parrish, P.A.*, by: *Jarrod S. Parrish*, for appellees.