PAUL E. DANIELSON, Justice. | Appellant Greg Prock appeals from the order of the Arkansas Workers’ Compensation Commission, which reversed, by a vote of 2-1, the decision of the Administrative Law Judge (“ALJ”) and denied and dismissed his claim against his employer, appellee Bull Shoals Landing.[1] He asserts two points on appeal: (1) that the Commission erred in finding that he did not rebut the presumption that his accident was substantially occasioned by his use of illegal drugs and (2) that the Commission’s disregard of credibility determinations by the ALJ and the Commission’s makeup, which he claims results in bias against the worker, violate his constitutional rights. Prock originally appealed the Commission’s decision to the court of appeals, which affirmed the decision by a vote of 6-3 on the first point and 9-0 on the second. See Prock v. Bull Shoals Landing, 2012 Ark. App. 47, 390 S.W.3d 78 (Prock II). Prock petitioned this court for review, which we granted. When we grant review of a decision by the court of appeals, we review the case as though the appeal had originally been filed in this court. See Hudak-Lee v. Baxter Cnty. Reg’l Hosp., 2011 Ark. 31, 378 S.W.3d 77. After review, we reverse and remand to the Commission for a determination of benefits. Prock’s injuries arose following an accident at Bull Shoals Landing, where he was employed. On November 1, 2007, Prock and his co-employee, Matt Edmisten,[2] were instructed by their supervisor, Steve Eastwold, to obtain two barrels from atop a hill and to cut the tops off the barrels. Prock and Edmisten did so, and they used an acetylene torch to successfully cut the top off the first barrel. However, when they began to cut the top off the second barrel using the torch, there was an explosion; both men suffered injuries and sought workers’ compensation benefits. Following the accident, drug tests on both men came back positive. On March 25, 2009, Prock’s attorney sent a letter to the ALJ, along with a motion to recuse and a brief regarding his constitutional challenges to the Commission’s jurisdiction. Specifically, Prock identified the following issues, which he intended to submit during the hearing before the ALJ: (1) whether the provisions of the Workers’ Compensation Act, which authorize the Commission to appoint ALJs and grant ALJs the power to hear and decide claims for compensation, being part of the Executive Branch “subject to political influences,” |..¡violate the substantive and procedural requirements of due process; (2) whether the provisions of the Workers’ Compensation Act, which authorize the Governor’s appointment of members to the Commission and give the Governor sole authority over the Commission’s appointment of ALJs, violate separation of powers by making judicial functions a part of and subject to the Executive Branch; (3) whether the provisions of the Workers’ Compensation Act, which place the judicial function of adjudicating claims for workers under the Executive Branch, violate article 5, section 32 of the Arkansas Constitution in that the constitutional provision does not expressly permit the legislature to delegate judicial functions to the Executive Branch;[3] (4) whether the provisions of the Workers’ Compensation Act, which place the judicial function of adjudicating workers’ claims under the Executive Branch, violate article 2, section 3 of the Arkansas Constitution;[4] (5) whether the provisions of the Workers’ Compensation Act, which place the judicial function of adjudicating workers’ claims under 14the Executive Branch, violate article 2, section 2 of the Arkansas Constitution;[5] (6) whether provisions of the Workers’ Compensation Act, which place the judicial function of adjudicating workers’ claims under the Executive Branch, violate article 2, section 18 of the Arkansas Constitution;[6] and (7) whether provisions of the Workers’ Compensation Act, which place the judicial function of adjudicating workers’ claims under the Executive Branch, violate article 2, section 29 of the Arkansas Constitution.[7] In his motion to recuse, Prock moved for the recusal of the ALJ assigned to his case and the recusal of all present ALJs and Commissioners on the basis that (1) they might “have a personal interest in the outcome of the proceedings by virtue of the threat against his or her job security”; and (2) since they perform their duties “under constant pressures that infringe and have a chilling effect upon their deci-sional independence,” their bias might reasonably be questioned. He further | .^requested that a special ALJ, with no direct interest in the outcome of the constitutional issues presented and free from even the appearance that his or her decisions are influenced by the Executive Branch or other private interests, be appointed and assigned to hear his claim. A hearing was held in Prock’s case on April 15, 2009. On May 15, 2009, the ALJ issued its order that denied Prock’s motion to recuse, found his constitutional challenges to be without merit, and found that the Workers’ Compensation Act was constitutional. It then found that illegal drugs, namely “eannabinoids,” were present in Prock’s body at the time of his accident. The ALJ noted that, pursuant to Arkansas Code Annotated § 11—9— 102(4)(B)(iv)(6), the presence of these drugs created a rebuttable presumption that Prock’s accident was substantially occasioned by the use of those drugs. Accordingly, the ALJ observed, the burden shifted to Prock to prove by a preponderance of the evidence that illegal drugs did not substantially occasion his accident or injury, in order to be entitled to compensation benefits. The ALJ then concluded that, “[o]n the basis of the record as a whole,” Prock had met his burden of proving by a preponderance of the evidence that his accidental work incident was not substantially occasioned by the use of drugs. The ALJ delineated the testimony and concluded as follows: Considering that none of the witnesses observed the claimant using marijuana or otherwise under the influence of marijuana at any time on the day of the explosion, and that the claimant credibly denied having used marijuana on the day of the incident, I am persuaded that any assertion or finding that the claimant’s accidental injury was the result of any “impairment” on the part of the claimant would be based on speculation and conjecture, which can never supply the place of proof. In other words, the preponderance of the credible evidence demonstrates that the claimant’s injury was the result of the claimant’s attempt to accomplish his assigned |fjob task in a quick and convenient manner and not the result of “impaired judgment,” caused by the use of marijuana. Accordingly, I find that the claimant has rebutted the presumption that his injury was substantially occasioned by the use of illegal drugs. As a result, I find that the claimant suffered compensable injuries, in the form of severe burns to his body (legs, hands, face and arms) when the barrel he was attempting to cut the lid from with a cutting torch exploded, while working for the respondent-employer on November 1, 2007. Accordingly, the ALJ found that Prock was entitled to benefits. Bull Shoals Landing and its carrier, AIG Claim Services, Inc., filed a notice of appeal from the ALJ’s opinion, appealing the decision to the full Commission, and the Commission issued its opinion, with a vote of 2-1 on October 14, 2009. In its opinion, the Commission found that, based on its de novo review of the record, Prock had failed to rebut the statutory presumption that his injuries were substantially occasioned by the use of illegal drugs, and it reversed the decision of the ALJ. The Commission opined that the question for it was “whether the claimant’s denial of having used marijuana on that date of the accident is sufficient to constitute a preponderance of the credible evidence and rebut the presumption that the accident was substantially occasioned by the use of marijuana.” It then concluded that Prock’s testimony was “not sufficient enough to rebut the statutory presumption,” as his testimony was “filled with inconsistencies and unexplained evidence” that clearly indicated that he failed to rebut the presumption. Specifically, the Commission cited to and placed “greater weight” on the testimony of Prock’s supervisor, Steve Eastwold. It further found that Prock’s claim that he had quit smoking marijuana due to another job offer was completely unsupported by the evidence, which served as further “evidence of the claimant not being a credible witness.” And finally, |7the Commission pointed out, the evidence demonstrated that Prock had been directed to use an air chisel to open barrels, but he denied this, in addition to the fact that the barrels had warning labels to not use a torch[8] to open them and that Prock failed to open the cap on the top of the barrel. Here, the Commission rejected outright Prock’s credibility and found as follows: [W]hen we consider all of the evidence in the record, we do not find the claimant to be a credible witness. The claimant lied about being shown how to use the air chisel. He lied about where he was when Mr. Eastwold told him what to do with the barrels. The claimant’s lack of personal safety is evident by his failure to even read the warning labels. Finally, we give no credit to his testimony he quit smoking pot as his reasoning for quitting smoking pot two weeks pri- or cannot be verified in any way, shape or form. We are not persuaded by claimant’s testimony that he always used a torch to remove the tops off the barrels as evidence that his marijuana use did not contribute to his injury. On the contrary, this evidence supports the fact of claimant’s long-term marijuana use and his lack of personal safety. The claimant had marijuana or its metabolic derivative in his body at the time of the accident. Therefore, under the law, it is presumed that this illegal drug use substantially occasioned his injury. The only evidence that it did not was elaim-ant’s unsubstantiated testimony that he always used a torch to open barrels and that he had not smoked marijuana for over a week. For those reasons set forth above, we do not find the claimant’s testimony to be credible. Therefore, we find that the claimant has failed to successfully rebut the statutory presumption. Accordingly, we hereby reverse the decision of the Administrative Law Judge. The Commission further found no merit in Prock’s constitutional challenges: On appeal, the claimant raises a new issue arguing that if the Commission reverses the Administrative Law Judge, the claimant’s due process rights are violated because the Administrative Law Judge’s finding is based on credibility. Essentially, the claimant is arguing that the Commission violates the claimant’s right to due process if it reverses a finding of credibility made by any Administrative Law Judge. We find the argument has no merit as this issue has previously been addressed by the Court of Appeals. hThe Commission then denied and dismissed Prock’s claim.[9] Prock then filed his notice of appeal with the Commission. The Arkansas Court of Appeals reversed and remanded the matter to the Commission. See Prock v. Bull Shoals Landing, 2010 Ark. App. 724, 2010 WL 4344563 (Prock I). In its opinion, the court noted the Commission’s finding that the only evidence to rebut the presumption was Prock’s and Edmisten’s denials of smoking marijuana and observed that the record showed that other evidence was in fact offered. It then concluded that “[b]e-cause the Commission stated that no such evidence existed, we are unable to say whether the testimony of these witnesses was disbelieved, overlooked, or disregarded arbitrarily.” 2010 Ark. App. 724, at 2. Because it is reversible error for the Commission to state that there is no evidence on an issue when such evidence in fact appears in the record, the court reversed and remanded the matter to the Commission for findings of fact sufficiently detailed and specific to permit meaningful judicial 19review. See id. In accord with the court of appeals’ mandate, the Commission issued a second opinion, with a 2-1 vote on December 14, 2010. In it, the Commission found, in pertinent part: In the present claim, the evidence shows that THC was present in the claimant at the time of the injury. The claimant denied using marijuana on the date of the accident. The claimant’s testimony is not sufficient enough to rebut the statutory presumption. The evidence demonstrates that the claimant’s testimony is filled with inconsistencies and unexplained evidence which clearly indicates that the claimant failed to rebut the presumption. The claimant testified that he arrived at work sometime between 7:00 and 8:00 a.m. He clocked in and stopped at the marina to have a cup of coffee. The claimant testified that he met Mr. Eastwold, the owner, as he walked out of the marina. The claimant had not begun any work-related activities when he saw Mr. Eastwold. The claimant testified that this was when Mr. Eastwold directed the claimant to take the tops off two barrels so he could burn Styrofoam. However, Mr. Eastwold testified that he first saw the claimant that day when he observed the claimant and Mr. Edmisten in the claimant’s personal vehicle coming from over a hill. It was at that time, while the claimant was in his Jeep, that Mr. Eastwold told the claimant to go get a couple of barrels and cut the tops off for him. Mr. East-wold made perfectly clear during his testimony that there was no reason for the claimant to be in his own vehicle on the stretch of road that he and Mr. Edmisten had been driving on. The claimant offered no explanation, but only denied being in the vehicle with Mr. Edmisten. The claimant testified that he and Mr. Edmisten were down at the marina when he encountered Mr. East-wold. This testimony is not corroborated by either Mr. Eastwold or Mr. Did-way. We place greater weight upon the testimony of Mr. Eastwold. [[Image here]] Therefore, when we consider all of the evidence in the record, we do not find the claimant to be a credible witness. The claimant lied about being shown how to use the air chisel. He lied about where he was when Mr. Eastwold told him what to do with the barrels. The claimant’s lack of personal safety is evident by his failure to even read the warning labels. Finally, we give no credit to his testimony he quit smoking pot as his reasoning for quitting smoking pot two weeks prior cannot be verified in any way, shape or form. We are not persuaded by claimant’s testimony that he always used a torch to remove the tops off the barrels as evidence that his marijuana use did not contribute to his injury. On the contrary, this evidence supports the fact of claimant’s admitted long-term marijuana use and his lack of personal safety. The claimant had marijuana or its metabolic derivative in his body at the time of the accident. Therefore, under the law, it is presumed that this illegal drug use substantially occasioned his injury. The evidence that it did not was the claimant’s testimony that he always used 1 ina torch to open barrels and that he had not smoked marijuana for over a week. His testimony is supported by Mr. Edmisten that he and the claimant did not smoke pot on the day of the incident. However, Mr. Edmisten’s testimony is suspect at best since he also has a pending workers’ compensation claim and had a vested interest in the outcome of this litigation. Further, the testimony of Mr. Didway that the claimant did not appear impaired before the incident is not persuasive enough to overcome the presumption as there were approximately 90 unaccounted for minutes between when the claimant was seen by Mr. Did-way and the incident, during which time the claimant was seen in his personal vehicle with Mr. Edmisten, an activity which he denies. When we weigh all the evidence, we do not find the claimant’s testimony to be credible. We further find that even if the claimant did not appear to be impaired while drinking coffee first thing in the morning, it is irrelevant. Mr. Edmisten and the claimant admitted that they did no work prior to going to retrieve the barrels. According to Mr. Eastwold and Mr. Didway, the explosion occurred at around 9:30 a.m. The gap in time from when the coffee-drinking ended and the explosion occurred is curious. The entire barrel-retrieving and cutting process, could not have taken 90 minutes. Mr. Eastwold testified that he encountered the claimant and Mr. Edmisten in the claimant’s vehicle, coming from the main road off the premises, at which point he asked them to cut the barrels. He testified that neither the claimant nor Mr. Edmisten would look him in the eye. He was not close enough to assess whether they appeared to be under the influence of marijuana. The gap in time between when the claimant was last seen by Mr. Didway and when he was asked to get the barrels by Mr. East-wold together with the claimant and Mr. Edmisten’s suspicious behavior of not looking Mr. Eastwold square in the face is sufficient enough to disregard Mr. Didway’s testimony regarding the claimant’s appearance early in the morning. Mr. Didway confirmed that the claimant had cut barrels open with a cutting torch previously. However, he stated that he would not have used this method. Moreover, he did not see Mr. East-wold on the dock at the point in time in which, according to Mr. Edmisten and the claimant, Mr. Eastwold was supposed to be asking them to cut barrels. With regard to Mr. Williams’s testimony, we do not find it persuasive enough to overcome the presumption. Mr. Williams testified that he never witnessed the claimant intoxicated at work. However, he admitted that he was not around Mr. Edmisten or the claimant at the time of the explosion. Accordingly, he could not have known whether the claimant was under the influence of drugs or alcohol when the incident occurred. Mr. Aaron corroborated Mr. East-wold’s testimony that he had shown the claimant and Mr. Edmisten how to use an air chisel to remove the top from a barrel. He was of the opinion that it is important to remove the bunghole cap from the barrel prior to cutting into it in order to release any buildup of gases inside. We find Mr. Eastwold to be more credible than Mr. Edmisten and the claimant concerning what | ntranspired the morning of the explosion. Therefore, based upon our de novo review of the record, we find that there is a direct causal link between the claimant’s marijuana use and the explosion. We find that the claimant has failed to rebut the presumption that the accident was substantially occasioned by his use of marijuana. That being the case, he has not proven by a preponderance of the evidence that he sustained a com-pensable injury. The claimant has failed to rebut the statutory presumption that the accident was substantially occasioned by his use of marijuana. Accordingly, we hereby reverse the decision of the Administrative Law Judge. With respect to Prock’s allegation that his due-process rights would be violated if the Commission reversed the ALJ, the Commission reaffirmed the finding from its October 14, 2009 opinion that Prock’s argument had no merit in light of the court of appeals’ previous holdings. The dissenting commissioner observed that the “only evidence of intoxication in this claim is the positive drug test.” With respect to the testimony, the dissenting commissioner discounted the testimony of both Prock and Edmisten, but found that [tjheir boss, Mr. Steve Eastwold, also an interested party, while insinuating that Mr. Prock and Mr. Edmisten were off smoking pot in Mr. Prock’s Cherokee, admitted that if he had thought they were intoxicated when he instructed them to cut the barrels he would not have let them work. [His] insinuation ..., specifically relied on by the majority, is sheer conjecture and speculation, which, even if plausible, cannot take the place of proof. In totality, the testimony of Mr. Didway, and that of Mr. Eastwold that he would not have let Mr. Prock and Mr. Edmis-ten work if he thought they were high, leads to a finding that the claimant was not intoxicated. The dissenter opined that “[t]he accident was substantially occasioned by Mr. Prock’s habit of cutting open oil barrels with an acetylene torch.” He then concluded that because the accident was not substantially occasioned by the use of marijuana, “the bar presented by Ark.Code Ann. § 11—9—102(4)(B)(iv) does not apply to this claim.” 112Prock filed his notice of appeal, and, as already noted, appealed to our court of appeals, which affirmed the Commission’s decision. See Prock II, supra. We granted review and now turn to the merits of Prock’s arguments on appeal. For his first point on appeal, Prock contends that the Commission erred in finding that he had failed to rebut the statutory presumption that his accident was substantially occasioned by his use of marijuana. He contends that there was no evidence presented by any person, including his employer, that he appeared intoxicated at the time of the accident; therefore, he claims, he clearly rebutted the presumption that the accident was substantially occasioned by his use of marijuana. Prock argues that any finding that the accident was substantially occasioned by marijuana would be based on pure speculation and conjecture. He additionally points out that evidence was presented that he had taken the same actions in the past without incident. Appellees aver that “basically” a bare denial is the only evidence to support Prock’s claim that he was not impaired on the day of the accident and that his testimony was filled with inconsistencies. In appeals involving claims for workers’ compensation, we view the evidence in the light most favorable to the Commission’s decision and affirm the decision if it is supported by substantial evidence. See Tyson Poultry, Inc. v. Narvaiz, 2012 Ark. 118, 388 S.W.3d 16. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. See id. The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission. See id. Additionally, questions concerning the credibility of | iswitnesses and the weight to be given to their testimony are within the exclusive province of the Commission. See Pack v. Little Rock Convention Ctr. & Visitors Bureau, 2013 Ark. 186, 427 S.W.3d 586. When there are contradictions in the evidence, it is within the Commission’s province to reconcile conflicting evidence and determine the facts. See id. Finally, the court will reverse the Commission’s decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. See Hudak-Lee v. Baxter Cnty. Reg’l Hosp., 2011 Ark. 31, 378 S.W.3d 77. Under Arkansas law, a workplace injury that is substantially occasioned by the use of alcohol, illegal drugs, or prescription drugs used in contravention of a physician’s order is not compensable. See Ark. Code Ann. § 11-9-102(4)(B)(iv)(a) (Repl. 2012); see also ERC Contractor Yard & Sales v. Robertson, 335 Ark. 63, 71, 977 S.W.2d 212, 216 (1998) (explaining that “substantially occasioned” means that there must be a direct causal link between the use of alcohol [or illegal drugs] and the injury or accident).[10] Once evidence is admitted showing that such drugs were in the claimant’s system at the time of the accident, the burden of proof shifts to the claimant, requiring him to prove by a preponderance of the evidence that the accident was not substantially occasioned by intoxication from one of these substances. See 114Ark. Code Ann. § 11—9— 102(4)(B)(iv)(b), (d). It is undisputed that illegal drugs, namely “cannabinoids,” were present in Prock’s body at the time of the accident and that the burden shifted to Prock to prove that the accident “was not substantially occasioned by the use of alcohol [or drugs].” The Commission’s opinion went into great detail illustrating why it found that Prock had been untruthful about his drug use. However, the issue before the Commission was whether Prock proved, by a preponderance of the evidence, that his accident or injury was not substantially occasioned by his drug use.[11] The evidence presented by Prock to rebut the presumption and to prove that there was not a causal link between drug use and the accident was as follows. Prock testified on his own behalf, claiming that he was not intoxicated in any manner on the day of the accident, but more importantly, that it was not the first time he had used a cutting torch to open barrels, that he had not read the warning labels, and that he did not know, nor had he been shown, another method for opening barrels. Mike Didway, a fellow employee of Prock’s, testified that he saw Prock suffer the injury and that Prock did not appear drunk or intoxicated. Didway stated that he had never seen Prock appear intoxicated at work in over seven years, 11sor smell of either alcohol or drugs. More importantly, Didway testified, “In the past I have seen [Prock] use a cutting torch to open the barrels and this is something I believe anyone could have observed.” Roger Williams, another fellow employee of Prock’s, testified that he did not see Prock prior to the explosion, but had never seen Prock come to work intoxicated or drunk in the ten years they had worked together. Matt Edmisten, the fellow employee who was injured with Prock during the accident, testified that Prock was not intoxicated in any manner. Edmisten additionally stated that he had seen Prock open barrels many times using a cutting torch and that he had helped and watched Prock open barrels that way “on many prior occasions, probably 15 to 20 times over the last 3 1/2 to 4 years.” Edmisten claimed that he believed it was reasonable for Prock to open barrels with a cutting torch as he had seen other employees do so. In fact, in describing the accident, Edmisten explained that Prock had already successfully cut the top off the first barrel with a torch before the accident happened while cutting into a second barrel. Although fellow employee Greg Aaron testified on behalf of Bull Shoals and contradicted Prock’s testimony that he had never been shown another method for opening barrels, Aaron did testify that he heard Prock comment that a torch would be a faster way of opening barrels than an air chisel. Finally, Steve Eastwold, Prock’s boss and a witness for Bull Shoals, testified that had Prock appeared to be intoxicated, he would not have allowed him to continue working. The above evidence can be summarized by concluding that no one saw Prock intoxicated on the day of the accident, no one saw him ingest anything, no one had seen him impaired in any way at work on prior occasions, and, most importantly, that he performed 11fia task that he had been asked to do in the same manner in which he had habitually performed it in the past. After a review of the Commission’s decision, we conclude that the Commission arbitrarily disregarded any testimony that supported Prock’s claim in addition to twisting, or leaving out of its opinion altogether, certain testimony that supported Prock. See also Edmisten v. Bull Shoals Landing, 2014 Ark. 89, 432 S.W.3d 25. While it is true that appellate courts defer to the Commission on issues involving the weight of evidence and the credibility of witnesses and that it may be insulated to a certain degree, it is not so insulated as to render appellate review meaningless. See Freeman v. Con-Agra Frozen Foods, 344 Ark. 296, 40 S.W.3d 760 (2001). The Commission may not arbitrarily disregard the testimony of any witness and, likewise, the Commission may not arbitrarily disregard other evidence submitted in support of a claim. Id. The “evidence” to support the Commission’s finding that the accident was substantially occasioned by intoxication is the mere speculation and conjecture that Prock was actually high on the day of the accident and that Prock had at some point been shown an alternative method for opening barrels.[12] We cannot say that is substantial evidence, and we do not conclude that reasonable minds could reach the result found by the Commission. We are convinced that fair-minded persons with the same set of facts could not have found that 117Prock failed to rebut the presumption by a preponderance of the evidence; rather, we conclude that fair-minded persons would find that the accident and the injuries were the direct result of Prock’s practice of opening barrels in an unsafe manner with an acetylene torch. For this reason, we reverse the Commission and remand for a determination of benefits. Prock additionally argues on appeal that the entire workers’ compensation system is unconstitutional and that his due-process rights were violated in the instant case when the Commission overturned the ALJ’s decisions regarding credibility. However, because we reverse and remand on his first argument, we will not reach the second. It is our duty to refrain from addressing constitutional issues if or when the case can be disposed of without determining constitutional questions. See Herman Wilson Lumber Co. v. Hughes, 245 Ark. 168, 431 S.W.2d 487 (1968); see also Solis v. State, 371 Ark. 590, 269 S.W.3d 352 (2007) (holding that, if the case can be resolved without reaching constitutional arguments, it is our duty to do so); Haase v. Starnes, 323 Ark. 263, 915 S.W.2d 675 (1996) (holding that constitutional issues are not decided unless it is necessary to the decision). Reversed and remanded; court of appeals’ opinion vacated. Special Justices JUDSON KIDD and TJUANA BYRD join in this opinion. BAKER and GOODSON, JJ., dissent. HART and HOOFMAN, JJ., not participating. . Bull Shoals was insured by appellee AIG Claim Services, Inc. . Edmisten's appeal from the Commission’s decision in his case is a companion to the instant case, being decided this same date. See Edmisten v. Bull Shoals Landing, 2014 Ark. 89, 432 S.W.3d 25. .Article 5, section 32 provides: The General Assembly shall have power to enact laws prescribing the amount of compensation to be paid by employers for injuries to or death of employees, and to whom said payment shall be made. It shall have power to provide the means, methods, and forum for adjudicating claims arising under said laws, and for securing payment of same. Provided, that otherwise no law shall be enacted limiting the amount to be recovered for injuries resulting in death or for injuries to persons or property; and in case of death from such injuries the right of action shall survive, and the General Assembly shall prescribe for whose benefit such action shall be prosecuted. . Article 2, section 3 provides; The equality of all persons before the law is recognized, and shall ever remain inviolate; nor shall any citizen ever be deprived of any right, privilege or immunity; nor exempted from any burden or duty, on account of race, color or previous condition. . Article 2, section 2 provides: All men are created equally free and independent, and have certain inherent and inalienable rights; amongst which are those of enjoying and defending life and liberty; of acquiring, possessing and protecting property, and reputation; and of pursuing their own happiness. To secure these rights governments are instituted among men, deriving their just powers from the consent of the governed. . Article 2, section 18 provides: The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens. . Article 2, section 29 provides: This enumeration of rights shall not be construed to deny or disparage others retained by the people; and to guard against any encroachments on the rights herein retained, or any transgression of any of the higher powers herein delegated, we declare that everything in this article is excepted out of the general powers of the government; and shall forever remain inviolate; and that all laws contrary thereto, or to the other provisions herein contained, shall be void. . The label actually warned not to cut at all; therefore, presumably, using an air chisel would also have been in contravention of the warning label. . The sole dissenter took issue with the majority’s statement that the only evidence to rebut the statutory presumption was Prock and Ed-misten's denial of smoking marijuana. The dissenting commissioner observed that in addition to Prock’s testimony, "Mr. Didway, Mr. Edmisten, and Mr. Eastwold all testified that they saw the claimant on the morning of the accident and observed that he was not impaired in any form or fashion.’’ The dissenter then found that Prock had successfully rebutted the presumption that the accident was caused by the use of marijuana. He continued, concluding: Considering that none of the witnesses observed the claimant using marijuana or otherwise under the influence of marijuana at any time on the day of the explosion, and that the claimant credibly denied having used marijuana on the day of the incident, I am persuaded that any assertion or finding that the claimant’s accidental injury was the result of any "impairment” on the part of the claimant would be based on speculation and conjecture, which can never supply the place of proof. In other words, the preponderance of the credible evidence demonstrates that the claimant's injury was the result of the claimant’s attempt to accomplish his assigned job task in a quick and convenient manner and not the result of "impaired judgment,” caused by the use of marijuana. . Justice Baker’s dissent contends that the majority misconstrues this court’s holding in ERC. There is absolutely no misconstruing that this court interpreted the use of "substantially occasioned” in the relevant statute to require a direct causal link between the use of alcohol (or drugs) and the injury in order for the injury to be noncompensable. The presumption itself mimics that very language. The Commission’s decision was that Prock did not successfully rebut that presumption. This court’s review obviously must discuss the presumption itself in some respect. . Justice Baker’s dissent additionally expresses concern that the majority is unaware of our proper role in reviewing the Commission. Fear not. The majority understands that the decision for the Commission was whether or not Prock proved by a preponderance of the evidence that his drug use did not substantially occasion the injury or accident. Again, because we are reviewing the Commission, it should come as no shock that the standard which should have guided the Commission would appear in our discussion. We are not unaware that a certain deference is given to the Commission and that our standard is different on appeal. However, we will simply not affirm the Commission where we are convinced that it was unreasonable in its conclusion and are not required to do so under the law. . Justice Goodson’s dissenting opinion makes the same mistake the Commission did and focuses on the evidence to support Prock’s intoxication and the finding that Prock was not credible. That focus is misplaced given the presumption. We may not lose sight of the fact that the presumption here is rebuttable. There is simply not substantial evidence for reasonable minds to find a direct causal link between any drug use and the way the injury happened. If we were to hold as the dissent insists we should, what then is the purpose of our review?