2011 Ark. App. 538

**Cloretta HAWLEY, Appellant**

v.

**FIRST SECURITY BANCORP and Travelers Insurance Company, Appellees.**

**No. CA 11–42.**

Court of Appeals of Arkansas.

Sept. 14, 2011.

389

James Edward Evans Jr., Springdale, for Appellant.

Phillip Parks Cuffman, Little Rock, for appellees.

CLIFF HOOFMAN, Judge.

Appellant Cloretta Hawley appeals from the Arkansas Workers' Compensation Commission's (Commission) decision, which affirmed and adopted the findings of

the Administrative Law Judge (ALJ), that Hawley is not entitled to medical treatment from Dr. Cyril Raben in connection with her compensable back injury. On appeal, Hawley argues that the Commission's decision is not supported by substantial evidence or by the law. We disagree and affirm the Commission's decision.

Hawley, who was fifty-nine years old at the time of her injury, was employed by appellee First Security Bancorp as a bank teller. On September 11, 2008, Hawley was leaving work for the day when she fell and injured her right knee, right elbow, and lower back. According to Hawley's description of the incident, there were two doors that she was required to go through to exit the building, and after she had gone through the first, inner door, she slipped on a step and fell onto her knees and her behind, also hitting her right $|_2$elbow in the process. Hawley testified that her last work duty for the day was to make sure that the outside security door had locked automatically behind her, and she stated that she had not yet exited this second door at the time of her fall. An ambulance was called, although Hawley testified that she chose instead to be driven to the hospital by a co-worker.

At the hospital, Hawley complained of pain in her right knee, right elbow, and back. The emergency room records noted the abrasions, bruising, and swelling in her right knee, as well as swelling and abrasions in her right elbow. There were no objective findings regarding injuries to Hawley's back at that time. She also underwent x-rays of her right knee and elbow, and she was diagnosed by the emergency-room physician with a contusion and an abrasion of her right elbow, a contusion and possible fracture of her right knee, and an acute lumbar strain. Although the emergency-room physician mentioned a possible right-knee fracture, the radiolo-

gist's report stated that only degenerative-joint disease of the knee was shown on the x-ray, with no evidence of an acute fracture.

Hawley was evaluated by Dr. Robert Wilson on September 15, 2008, for her back complaints. His report stated that the pain in her back had worsened, but no objective findings, such as muscle spasms or swelling, were noted. The results of a neurological examination were also normal in regard to sensory and motor function, gait and station, reflexes, and muscle strength. Hawley's straight-leg raising test was also negative. An x-ray was performed on her lumbar spine, which was normal. Dr. Wilson diagnosed her with a lumbar strain and gave her instructions not to lift more than ten pounds or engage in repetitive bending or twisting. He stated that he expected Hawley's complaints to resolve $|_3$over time and that she should be able to return to work with no restrictions. Hawley was further instructed to return immediately if she noted any radicular symptoms or sensory or motor loss; otherwise, she was to follow up in one or two weeks if her symptoms had not improved.

On September 24, 2008, Hawley was examined by Dr. Kris Hanby for her right-knee-pain. The medical report noted definite bruising and that her gait was slightly antalgic. From his review of her right-knee x-rays, Dr. Hanby concluded that there was no definite fracture, although she had moderate arthritis, as well as definite narrowing and large osteophytes. He diagnosed Hawley with degenerative joint disease in her right knee and a contusion. Dr. Hanby placed her on limited activity for six weeks, then the plan was to obtain repeat x-rays, and if those were fine, to return her to full work duties. There is a Family and Medical Leave Act form signed by Dr. Hanby on September 26,

indicating that Hawley was to remain off work through November 5, 2008. There are no other medical records indicating that Hawley returned to see either Dr. Hanby or Dr. Wilson for her knee or back complaints after September 2008.

The next medical report provided by Hawley is from September 9, 2009, approximately one year later, from her initial visit with Dr. Cyril Raben. The report states that she was complaining of low-back pain that she had felt since her on-the-job injury on September 11, 2008. Dr. Raben reviewed the x-rays that had been performed on her lumbar spine right after her accident and found that it was "essentially normal," except for some osteophytosis and "close to a grade 1 spondylolisthesis of L4–5." Dr. Raben noted that her previous physicians had not seen anything wrong with Hawley's lumbar spine from these x-rays. According to Dr. Raben's report, Hawley was "markedly" obese. His exam noted that she had pain with forward flexion and extension of her lumbar spine, difficulty with heel-to-toe walking, pain and tenderness on palpation, a marked reduction in her range of motion, and obvious muscle spasms. He recommended that Hawley undergo an MRI of her lumbar spine, as he was concerned about internal disc derangement. After reviewing the results of the MRI, Dr. Raben noted in his report from Hawley's next visit on September 17, 2009, that she had L2–3, L3–4, and L5–S1 disc-space desiccation with some areas of hypointensity. He diagnosed Hawley with disc degeneration, disc herniation, and radicular-syndrome neuritis. Dr. Raben stated that he and Hawley discussed when this could have happened and that her fall a year earlier "could have been the culprit and could have caused this desiccation" he saw on the MRI. He recommended physical therapy and pain management. At Hawley's follow-up visit on October 15, 2009, Dr.

Raben noted that Hawley's pain in her lower back had been increasing in the last month and that she was having difficulty sleeping and performing normal tasks. Dr. Raben recommended a CT discography of Hawley's lumbar spine to find out the source of her pain symptoms.

Because First Security had not accepted Hawley's injuries as compensable and had previously provided no benefits in connection with her fall, Hawley next filed a claim in October 2009, seeking medical treatment and temporary total disability (TTD) benefits for her knee and back injuries. First Security controverted the claim in its entirety, and a hearing was held before the ALJ in April 2010. Hawley testified at the hearing that she had no back pain before her fall at work. At the time of her fall, Hawley stated that she felt her back "jar down three times like my bones were going down." She stated that her pain at the time she went to see Dr. Raben was the same as right after her fall, except that she later cried all the time. According to Hawley, she had not tried to return to work because she was physically unable to work due to her back pain, which also causes numbness and spasms in her arms and legs. Hawley testified that Dr. Wilson had prescribed pain medication for her back but that she had stopped taking it prior to seeing Dr. Raben. She expressed her desire to keep seeing Dr. Raben, as well as Dr. Hanby, as long as it was necessary for her injuries. She testified that she had not yet had the CT discography recommended by Dr. Raben because she no longer had insurance coverage.

At the conclusion of the hearing, the ALJ found that Hawley was performing employment services at the time of her fall and that she suffered compensable injuries in the form of a contusion to her right knee and a lumbar strain to her back. She was awarded TTD benefits from Septem-

ber 12, 2008, through November 5, 2008. The ALJ found that Hawley was not entitled to TTD benefits after this time because the evidence indicated that Hawley did not remain in her healing period past this date. According to the ALJ, Hawley failed to prove that the medical services provided or recommended to her on and after September 9, 2009, by Dr. Raben were reasonably necessary for her compensable lumbar injury. Specifically, the ALJ found that Hawley failed to prove that these medical services were necessitated by or connected with her compensable injury of September 11, 2008. After Hawley appealed the ALJ's decision, the Commission entered an order on October 21, 2010, agreeing with the decision of the ALJ and affirming and adopting his findings. Hawley now appeals the Commission's decision.

■■■ When reviewing a decision of the Workers' Compensation Commission, the Court of Appeals views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission. *Evans v. Bemis Co., Inc.*, 2010 Ark. App. 65, 374 S.W.3d 51. This court must affirm the decision of the Commission if it is supported by substantial evidence. *Id.* Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion of the Commission. *Id.* We reverse the Commission's decision only if we are convinced that fair-minded persons could not have reached the same conclusion with the same facts before them. *Id.* Questions regarding the credibility of witnesses and the weight to be given their testimony are within the exclusive province of the Commission. *Id.* When the Commission, as it did in this case, affirms and adopts the ALJ's findings, this court considers both the ALJ's decision and the Commission's opinion.

*Montgomery v. J & J Lumber Co.*, 2011 Ark. App. 129, 2011 WL 542666.

■■■ Arkansas Code Annotated section 11–9–508(a) (Supp.2009) requires employers to provide such medical services as are reasonably necessary in connection with the injury received by the employee. The injured employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonably necessary for treatment of a compensable injury. Ark.Code Ann. § 11–9–705(a)(3) (Supp.2009); *Jordan v. Tyson Foods, Inc.*, 51 Ark.App. 100, 911 S.W.2d 593 (1995). Reasonably necessary medical treatment may include that which is necessary to accurately diagnose the nature and extent of a compensable injury, to reduce or alleviate symptoms resulting from the compensable injury, to maintain the level of healing achieved, or to prevent further deterioration of the damage produced by the compensable injury. *Jordan, supra.* What constitutes reasonable and necessary treatment under section 11–9–508(a) is a fact question for the Commission. *General Elec. Railcar Repair Servs. v. Hardin*, 62 Ark.App. 120, 969 S.W.2d 667 (1998).

Hawley argues that the ALJ's and Commission's findings that her treatment from Dr. Raben for her lumbar injury was not causally connected to the September 11, 2008 incident and was not reasonably necessary medical treatment are not supported by substantial evidence. Hawley asserts that her lumbar pain started immediately after her fall and that it continued unabated through the time she sought treatment from Dr. Raben. She argues that her lumbar injury was first documented by the emergency-room doctor and Dr. Wilson after the accident and that Dr. Raben's care was, and continues to be, necessary to accurately diagnose the nature and extent of her compensable injury, as well as to treat her persistent pain.

Hawley further contends that every physician from whom she sought treatment determined that her back problems were work related.

■ As Hawley correctly notes in her argument, objective medical evidence is not essential to establish a causal relationship between the injury and the work-related accident in every case, such as where the claimant presents supplemental evidence supporting the causal connection. *Freeman v. Con–Agra Frozen Foods,* 344 Ark. 296, 40 S.W.3d 760 (2001); *Heptinstall v. Asplundh Tree Expert Co.,* 84 Ark. App. 215, 137 S.W.3d 421 (2003). However, where the claimant relies on medical evidence to establish causation, such medical evidence ₈must satisfy the statutory requirement under Ark.Code Ann. § 11–9–102(16)(B) (Supp.2009), that medical opinions be stated within a reasonable degree of medical certainty. *Freeman, supra.* Our supreme court has held that expert medical opinions based on the language "could," "may," or "possibly," are insufficient to satisfy this statute. *Frances v. Gaylord Container Corp.,* 341 Ark. 527, 533, 20 S.W.3d 280, 284 (2000).

■ In this case, Dr. Raben diagnosed Hawley with degenerative-disc dessication, degenerative-disc herniation, and radiculitis, and stated that these injuries "could" have been caused by her September 11, 2008 accident at work. Thus, this medical opinion fails to meet the required standard of medical certainty.

■ The ALJ also found that Hawley failed to meet her burden to prove by other, supplemental evidence that her lumbar symptoms on or after September 9, 2009, when she first sought treatment from Dr. Raben, were related to her compensable work-related incident nearly one year earlier. As the ALJ noted, both the emergency-room doctor and Dr. Wilson diagnosed Hawley with merely a lumbar strain immediately after the accident. Dr. Wilson's medical report from her visit on September 15, 2008, indicated that her lumbar x-rays were normal, and he found no objective evidence of abnormalities during his examination, such as muscle spasms. Dr. Wilson directed Hawley to return immediately if she experienced any radicular symptoms or sensory or motor loss; otherwise, he instructed her to return for a follow-up visit in one to two weeks if her back symptoms did not improve. The record indicates that Hawley never returned to see Dr. Wilson, or any other doctor, until she sought treatment from Dr. Raben in September 2009, almost one year later. As the ALJ found, ₉Hawley offered no credible explanation for her failure to seek treatment for her back complaints during this intervening period of time, despite her claim that her symptoms had remained the same since her fall.

■ After reviewing all of the evidence, the ALJ found that Hawley had proven that she sustained a compensable lumbar injury resulting from her September 2008 fall in the form of a lumbar strain, but that the "greater weight of the credible evidence fails to show that this accidental fall caused, aggravated, or contributed to any of the spinal abnormalities that were noted on the September 11, 2009 MRI, particularly the degenerative disc desiccation." In making this determination, the ALJ noted that degenerative-disc desiccation at multiple levels in the spine is generally recognized as a result of the aging process, rather than from a specific trauma. The ALJ relied upon the opinions of the emergency-room physician and Dr. Wilson as to the nature and extent of Hawley's compensable back injury, stating that these opinions were more credible and supported by the evidence as a whole than

the opinion of Dr. Raben. It is within the Commission's province to weigh conflicting medical opinions and evidence, and when the Commission chooses to accept the opinion of one physician over that of another, the appellate court is powerless to reverse the decision. *Hernandez v. Wal-Mart Assoc., Inc.*, 2009 Ark. App. 531, 337 S.W.3d 531. Because substantial evidence supports the Commission's decision to deny Hawley medical treatment for her lumbar symptoms on and after September 9, 2009, we affirm.

Affirmed.

WYNNE and MARTIN, JJ., agree.