SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV–14–655



| | | |
|---|---|---|
| JOEY HOPKINS | | **Opinion Delivered** February 4, 2015 |
| | APPELLANT | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G103688] |
| V. | | |
| HARNESS ROOFING, INC., and CNA INSURANCE COMPANY | | |
| | APPELLEES | REVERSED AND REMANDED |

**KENNETH S. HIXSON, Judge**

In this workers' compensation case, appellant Joey Hopkins appeals the Commission's findings that (1) denied his claim for additional medical treatment recommended by Dr. Christopher Arnold for an admittedly compensable September 16, 2010 right-knee injury, and (2) rejected his argument that the Commission is biased and its activities unconstitutional. The Commission affirmed and adopted the administrative law judge's decision.[1] We reverse on point one, and we affirm on point two.

We first address the contention that the Commission's decision to deny additional medical treatment is not supported by substantial evidence. Appellant, a man in his thirties, worked for Harness Roofing, Inc., for eleven years, and his last six years were served in the

---

[1]The dissenting Commissioner concurred that the Workers' Compensation Act was constitutional but dissented as to the denial of additional medical treatment, finding that causation was proved by a preponderance of the evidence.

SLIP OPINION

capacity of foreman. It was undisputed that the appellant sustained a compensable injury to his right knee in 2007 and another compensable injury to his right knee in 2008. Both injuries were generally described as medial meniscus tears with effusion as well as a chondral injury. Dr. Terry Sites, an orthopedic surgeon, performed arthroscopic knee surgeries for both injuries. The evidence indicated that the appellant fully recovered from the 2007 and 2008 injuries (sometimes referred to herein as the "2007 injury" and the "2008 injury," respectively.) On September 16, 2010, the appellant testified that as he was stepping to a higher elevation on the roof, he felt "a tear" and pain in his right knee (sometimes referred to herein as the "2010 injury.") The injury was promptly reported to his employer.

The following day, the appellant presented to Dr. Corey Jackson for right-knee pain. The medical record dated September 17 provides in pertinent part that the appellant presented with increased pain in the right knee with positive effusion and limited range of motion on flexion. The physician prescribed an anti-inflammatory and a knee brace. The appellant returned to Dr. Jackson ten days later for a followup appointment. The medical record dated September 27 provides in pertinent part that the appellant's knee was about twenty-five percent back to normal but that his knee was locking up maybe twenty times a day. The physician kept the appellant on the same treatment plan. The appellant returned to Dr. Jackson again three weeks later for a followup appointment. The medical record dated October 18 provides in pertinent part that the right-knee pain was about the same and that the appellant could do pretty well on flat ground but that the right knee was still locking up six or seven times a day. Dr. Jackson referred the appellant to an orthopedic surgeon.

Since the appellant was treated by Dr. Sites for both his 2007 and 2008 compensable injuries, the appellant was referred to Dr. Sites for the 2010 injury. On November 3, 2010, the appellant was seen by Dr. Sites. The medical record dated November 3, 2010, provides in pertinent part that the appellant returned to the clinic after sustaining *a new work injury*. Dr. Sites noted that the appellant initially felt a sudden sharp pain in his right knee and then it locked and he was unable to fully extend it; that the appellant took some time off; and that Dr. Jackson had prescribed some anti-inflammatory medication, which helped. Dr. Sites noted:

> Over the last couple of years until his most recent injury his knee has felt essentially normal to him. …He had previous significant chondral pathology and had been doing well until his more recent event[.]

After examination, Dr. Sites's impression was right-knee pain, possible meniscal tear, loose body, progression of chondral injury or other. The surgeon prescribed conservative treatment including continuing the NSAIDs and commencing a home-exercise program, and the appellant was advised to return in four weeks. Dr. Sites projected, "With ongoing difficulties at that time, I would recommend re-scoping his knee." Dr. Sites wrote a report to Gallagher–Bassett, the third-party administrator for the appellee, repeating his findings and treatment plans.

The appellant returned to Dr. Sites for a follow-up on December 1, 2010. Following the appointment, Dr. Sites wrote another letter to Gallagher–Bassett. The letter provides in pertinent part that the appellant returned to the clinic that day and that his right knee was not

improved, in spite of the use of anti-inflammatory medication. He was noted to have pain, catching, and intermittent locking. Dr. Sites then indicated to Gallagher-Bassett:

> Given the mechanical symptoms of catching and lock, his failure to progress with rest, a home exercise program and anti-inflammatories it is medically indicated to proceed with right knee arthroscopy. He may have sustained additional chondral inury to the knee, a meniscus tear, have loose bodies and/or others. ...I will allow him to continue his current no [sic] regular work duties in anticipation of outpatient arthroscopy.

The same day, Dr. Sites filled out a workers' compensation return-to-work form indicating the stipulated injury date of September 16, 2010, the type of surgery recommended as arthroscopy, and the date of surgery as "pending approval." At the bottom of the office note record, a handwritten notation appears: Rt knee arthroscopy at Physician's Specialty Hospital.

The appellant testified that after the December 3, 2010, office visit with Dr. Sites, he waited to receive approval for the arthroscopy from the appellee or Gallagher-Bassett. The appellant stated that he checked with his boss on three occasions for approval without obtaining any answer. Finally, around the first of the year after the holiday break, the appellant called the corporate office and spoke with Gail Zeers in Human Resources about his workers' compensation claim and the request for approval for the surgery. Ms. Zeers placed a three-way call to Gallagher-Bassett. The participants to the call included the appellant, Ms. Zeers, and a representative of Gallagher-Bassett. At the conclusion of the three-way call, the representative of Gallagher-Bassett advised the appellant and Ms. Zeers that his request for surgery was "under review."

Jane Tiffell testified that she was the local human resources representative for the appellee and that she was aware of the injury to the appellant that occurred in September

4

2010. Ms. Tiffell stated that it was the practice of the appellee to report all workers' compensation claims to Gallagher-Bassett and that after the first report of injury was transmitted, the appellee did not participate in the claim at all. Instead, she said, all communication should be made directly with Gallagher-Bassett.

By May of 2011, the appellant still had not received an approval or refusal from the appellee or Gallagher-Bassett for the permission for the arthroscopic surgery submitted by Dr. Sites. The record is unclear if, or when, the appellee or Gallagher-Bassett actually refused the request for approval for the arthroscopic surgery. On May 27, 2011, the appellant voluntarily left the employment of the appellee to attend taxidermy school and pursue a career that was easier on his body. The appellant opened a taxidermy business in October 2011 and works on his father's golf course during slow times.

The appellant did not seek further medical treatment for his right knee until April 2013, following the March 15, 2013, approval by the Workers' Compensation Commission of a one-time change of physician from Dr. Terry Sites to Dr. Christopher Arnold. On April 4, 2013, appellant presented to Dr. Arnold. Dr. Arnold noted the previous surgeries to his right knee and that he had not seen Dr. Sites again until the new injury, having last seen Dr. Sites in December 2010. Dr. Arnold confirmed Dr. Sites's diagnosis and plan and stated:

> Dr. Sites recommended a scope and to see if he would be a candidate for autologous chondrocyte harvest and later reimplantation. This was never approved. He has since requested change of physicians and presents to me for evaluation. He has mechanical signs and symptoms. His knee swells, catches, and locks. It is medial and it is anterior. …The more he uses it, the more problems he has.

Dr. Arnold noted that rest, anti-inflammatory medications, and therapy had not worked. Dr. Arnold recommended that he have the cartilage restoration procedure, but if not, he would need a knee replacement eventually. Dr. Arnold agreed with Dr. Sites's recommended scope procedure with chondrocyte harvest and reimplantation. By May 2013, Dr. Arnold noted that the cartilage restoration procedure was never approved, although appellant's knee hurt all the time.

Although the addendum does not contain a refusal to allow the treatment by Dr. Arnold, evidently the appellee refused the request. The prehearing order dated September 3, 2013, provides the following pertinent information:

- The parties stipulate that the claim was accepted as a compensable medical-only one and medical benefits were paid pursuant thereto.
- The respondent contends that the surgery requested is not reasonable, necessary or related to [appellant's] work injury. The surgery is related to [appellant's] pre-existing condition and symptoms and not the work injury.

The ALJ and the Commission denied the claim for additional medical treatment finding that the appellant failed to prove by a preponderance of the evidence that the requested medical treatment was causally related to the 2010 compensable injury.

We review the evidence in a workers' compensation appeal in the light most favorable to the decision of the Commission and affirm if it is supported by substantial evidence. *Tucker v. Bank of Am.*, 2013 Ark. App. 585. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The determination of credibility and the weight to be given a witness's testimony is within the sole province of the Commission. *Williams v. Brown's Sheet Metal*, 81 Ark. App. 459, 105 S.W.3d 382 (2003). On review, the

issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Id*. While the Commission's decisions may be insulated to a certain degree, it is not so insulated as to render appellate review meaningless. *Freeman v. Con-Agra Frozen Foods*, 344 Ark. 296, 40 S.W.3d 760 (2001).

The workers' compensation act provides in Arkansas Code Annotated section 11-9-508(a) that the employer must promptly provide that medical care "as may be reasonably necessary in connection with the injury received by the employee." What is reasonably necessary medical treatment, and whether it is causally connected to the compensable injury, are questions of fact for the Commission. *Walker v. Fresenius Med. Care Holding, Inc.*, 2014 Ark. App. 322, 436 S.W.3d 164. For a work-related accidental injury, it is not necessary that the claimant prove that the injury is the major cause of the disability or need for treatment. *Estridge v. Waste Mgmt.*, 343 Ark. 276, 33 S.W.3d 167 (2000). It is the claimant's burden, though, to establish by a preponderance of the evidence that he is entitled to additional medical treatment. *Dalton v. Allen Eng'g Co.*, 66 Ark. App. 201, 989 S.W.2d 543 (1999). Because employers take an employee as he finds him, employment circumstances that aggravate preexisting conditions are compensable. *Ozark Natural Food v. Pierson*, 2012 Ark. App. 133, 389 S.W.3d 105; *Grothaus v. Vista Health, LLC*, 2011 Ark. App. 130, 382 S.W.3d 1.

This case does not involve conflicting medical testimony. The ALJ and the Commission accepted the medical opinions of both Drs. Sites and Arnold as sound with

regard to reasonably necessary medical treatment. Both doctors were appellant's approved and

authorized treating physicians for the admittedly compensable knee injury. The ALJ recited:

> Ultimately, Dr. Sites recommended that Claimant undergo a scope of his right knee. But for months thereafter, Respondents did not approve the procedure. It is this surgery that Claimant is still seeking—although he wants Dr. Chris Arnold to perform it.
>
> . . . .
>
> The sole claim before me is one for a right knee injury that took place on September 16, 2010. The parties have stipulated, and I have agreed, that this injury was a compensable one. Claimant is asking that I award him additional treatment at Respondent's expense—with that treatment consisting of surgery recommended by Dr. Arnold, whom he saw pursuant to his one-time change of physician. As quoted above, Arnold is recommending that Claimant undergo cartilage restoration, which consists of the harvesting of autologous chondrocytes and reimplantation of them later. Dr. Sites, with whom Claimant has an extensive history, agrees with this approach. I credit their opinions in this matter.

The ALJ recited further that "[t]he fact that Claimant undoubtedly had prior problems with

his right knee is not, in and of itself, problematic for his case, *if* the 2010 incident aggravated

that condition." (Emphasis in original.) *Jim Walter Homes v. Beard*, 82 Ark. App. 607, 120

S.W.3d 160 (2003). The ALJ and Commission accepted appellant's testimony as credible

"that he was having no problems with his right knee prior to the September 16, 2010 incident

at work," finding that compatible with the history given to Dr. Sites. Appellee contended

that there lacked a causal link between the September 2010 work injury and the need for this

treatment, instead contending that the 2007 injury and the 2008 injury were the cause of the

need for treatment.

It is clear from the medical records that as early as December 1, 2010, Dr. Sites was of

the medical opinion that a right-knee arthroscopy was medically necessary to determine

whether the 2010 injury caused a meniscus tear, loose bodies, or an additional chondral injury. Reasonably necessary medical treatment may include that which is necessary to accurately diagnose the nature and extent of a compensable injury, to reduce or alleviate symptoms resulting from a compensable injury, to maintain the level of healing achieved, or to prevent further deterioration from the damage produced by the compensable injury. *Hawley v. First Sec. Bancorp*, 2011 Ark. App. 538, 385 S.W.3d 388. Even appellee states in its brief that the September 2010 injury was an "aggravation" of appellant's previously injured right knee. An aggravation of a preexisting, noncompensable condition by a compensable injury is, itself, compensable. *Williams v. L & W Janitorial, Inc.*, 85 Ark. App. 1, 145 S.W.3d 383 (2004). The major-cause analysis is applicable only in gradual-injury cases and when the employee is seeking permanent disability benefits. *Id.* Here, appellant's asymptomatic right knee became symptomatic due to a 2010 work injury; reasonable minds could not find that the need for treatment was not causally related to the new injury. *See St. Edward Mercy Med. Ctr. v. Howard*, 2012 Ark. App. 673, 424 S.W.3d 881.

The sole basis upon which this claim was denied was that Dr. Arnold—appellant's approved treating physician on this claim—did not specifically mention the 2010 workplace injury in his medical records. Given that there was a stipulated September 2010 compensable workplace injury to his right knee that caused swelling, pain, and catching, the absence of the exact date of the stipulated work injury in one medical record is not fatal to appellant's claim. The treatment sought and the condition to treat remained consistent between the doctors and consistent with the claimant's history. The Commission's decision to deny additional medical

treatment in the form of uniformly recommended surgical intervention is not supported by substantial evidence. *See Saline Mem'l Hosp. v. Smith*, 2013 Ark. App. 29 (workplace injury sped up need for surgery on pre-existing arthritic knee); *Williams*, *supra* (major cause not required in specific-incident workplace injury where only medical and TTD sought; compensable knee injury was deemed a factor in claimant's need for additional surgery on pre-existing arthritic knee). We therefore reverse and remand on this issue.

Moving to the constitutionality argument, we summarily reject it. First, this issue is moot because we are reversing in appellant's favor on the substantive issue. *See Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858. Moreover, even if we were to address this issue, appellant's attorney has repeatedly raised this same constitutionality argument before our court, and we have repeatedly rejected it. *See, e.g.*, *Strother v. Lacroix Optical*, 2013 Ark. App. 719; *Sykes v. King Ready Mix, Inc.*, 2011 Ark. App. 271; *Long v. Wal-Mart Stores, Inc.*, 98 Ark. App. 70, 250 S.W.3d 263 (2007). Thus, point two holds no merit.

We reverse and remand on the issue of additional medical treatment.

GLADWIN, C.J., and VIRDEN, J., agree.

*Frederick S. "Rick" Spencer*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *Guy Alton Wade* and *Phillip M. Buck, Jr.*, for appellees.