KENNETH S. HIXSON, Judge *458 Appellant Robert A. Woods appeals from an August 14, 2017 opinion by the Arkansas Workers' Compensation Commission (Commission) affirming and adopting the findings of fact and conclusions of law made by the administrative law judge (ALJ) in favor of appellees, Tyson Poultry, Inc. (Tyson); Tynet Corporation; and Death & Permanent Total Disability Trust Fund. On appeal, appellant contends that (1) substantial evidence does not support the Commission's decision that he was not permanently and totally disabled, and (2) the Workers' Compensation Act violates the separation-of-powers doctrine and his right to due process. We disagree and affirm.
It is undisputed that appellant sustained a compensable work-related injury on September 15, 2013, during his employment at Tyson. Appellant's left hand was injured, which subsequently necessitated amputation below his elbow. He now uses a prosthesis. Appellant reached maximum medical improvement on June 24, 2015, and was issued an impairment rating. Subsequently, appellant sought permanent and total-disability benefits, which appellees contested. Appellant additionally sought additional medical treatment by Dr. James Kelly, appellant's former treating physician and surgeon, and for additional psychiatric treatment. A hearing was held before the ALJ on these issues.
Appellant provided a lengthy "Constitutional Brief" in which he raised challenges to the constitutionality of the Workers' Compensation Act, to which appellees filed a response. Appellant alleged that the Workers' Compensation Act violates the separation-of-powers doctrine and his right to due process. He further alleged that the evidence submitted by him established that the executive branch of the State of Arkansas and private interests have exerted pressure on workers'-compensation ALJs and commissioners, which infringes on their decision independence and results in actual bias and the appearance of bias in the decisions of the ALJs and commissioners. Therefore, he requested that all present ALJs and commissioners recuse themselves from participating in his case.
At the hearing before the ALJ, appellant testified that he still experiences varying degrees of pain and that he desires to go back for further treatment by Dr. Kelly for help with his prosthesis. Appellant testified that he is able to dress himself but that his clothes must have suspenders to do so. His son assists him in bathing. Appellant testified that during the day, he watches television and plays on his phone. He also drives his children to school and is able to use a riding lawn mower. Appellant further admitted on cross-examination that he had previously indicated that he could perform household chores, start the laundry, and prepare easy meals.
Appellant indicated that after the injury, he received psychiatric treatment from Dr. Richard Back when he previously felt suicidal and "useless." Dr. Back diagnosed appellant with posttraumatic stress disorder (PTSD). Appellant testified that he is still experiencing nightmares and desires *459 to go back to see a psychiatrist. Brian Herring, appellant's pastor, testified at the hearing that he also thought appellant is depressed based on the conversations that he had with appellant.
Dr. Kelly testified via deposition that appellant is suffering from phantom limb pain and PTSD. Dr. Kelly agreed that it would be reasonable for appellant to see a psychiatrist to aid in his PTSD. Dr. Kelly also testified that he would be willing to see appellant for another evaluation of his arm.
The ALJ reviewed the medical records and vocational reports. The record reflects that appellant met with a vocational-rehabilitation counselor, Heather Taylor, to complete a vocational-rehabilitation assessment. Ms. Taylor reported:
In summary Mr. Woods will likely experience difficulty if he is able to return to the workforce. Mr. Woods has primarily performed unskilled labor jobs his entire career. Per Dr. Kelly, Mr. Woods is not limited to one-armed work. Based on his past work history, educational background, current level of achievement, and lack of transferrable skills, he will be limited to future unskilled/semi-skilled work but less physical demanding because of his limitations. He is not a candidate for formal re-training for purposes of skill acquisition.
Based on the labor market research completed in his area, few current job openings were identified that would fit within his restrictions. Of those few, his likely earnings would be minimum wage ($8.00/hour approximately) which is less than what he was earning at the time of his injury.
If Mr. Woods desires job search assistance, I would be available to try and assist with that process. If additional information or clarification is desired, please contact me.
Appellant additionally met with a second vocational-rehabilitation counselor, Dr. Tanya Rutherford Owen. Dr. Owen reported:
Mr. Woods' previous positions have consisted of medium to heavy level work. At this time, Mr. Woods has limitations as a result of his left arm injury, limiting him to work that involves lifting up to 25 pounds. Return to work in previously held occupations is not possible with his assigned physical restrictions. As a result of his work experience, Mr. Woods has acquired very few skills that would transfer to work within his physical limitations. However, there are entry-level jobs for which Mr. Woods qualifies. I have outlined a sample of these jobs above and have outlined rehabilitation options also available to Mr. Woods.
The ALJ took the case under advisement, filed its opinion on February 3, 2017, and specifically made the following pertinent findings:
The Commission has been asked to determine if the claimant is permanently and totally disabled. Permanent and total disability is defined in Arkansas Code Annotated § 11-9-519(e)(1). That statute defines permanent and total disability as the inability, because of compensable injury, to earn any meaningful wages in the same or other employment. The question of permanent and total disability is an issue of fact and all relevant evidence bearing upon the issue should be considered by the Commission, Revere Cooper & Brass, Inc., v. Birdsong, 267 Ark. 922, 593 S.W.2d 54 (1979). Here, the claimant has a high school diploma with no other significant training or education. He has worked as a general laborer for most of his work history, until the time of his injury. He stated that he had not worked since the *460 time of his injury. Due to his injury, the claimant now has lifting restrictions and has the use of only one arm. The claimant has not attempted to return to work. Both vocational reports in the record reflect that the claimant cannot return to the jobs he held in the past. They both do, however, state that he could work in positions of cashier, housekeeping, greeter, and asset protection-entry level jobs. The claimant contends that he cannot perform these jobs. There is nothing credible in the record to support such a finding. The medical records reflect that he progressed well from his amputation surgery. While he is indeed now one handed, he is right handed and has lost the use of his left hand. While the claimant may have issues with his prosthesis and be experiencing some pain issues, these appear to be issues that can be addressed and would not keep him from performing the jobs or participating in the training programs listing in the vocational reports. The claimant drives, does yard work, and mows despite his loss of the left hand and forearm. The claimant, here, has not suffered an inability to earn any meaningful wages in the same or other employment due to his compensable amputation injury. There are jobs that the claimant can perform despite his injury. The claimant has failed to prove by a preponderance of the evidence that he is permanently and totally disabled. He has not proven that he cannot earn any meaningful wages in the same or other employment due to his compensable amputation injury. The claimant has suffered a scheduled injury; as such, he is not entitled to wage loss despite having been found not permanently totally disabled.
(Emphasis added.) The ALJ did, however, find that appellant was entitled to additional medical treatment with Dr. Kelly and that he was entitled to additional psychiatric treatment.
The appellant appealed the ALJ's decision, and appellees cross-appealed. The Commission affirmed and adopted the ALJ's opinion as its own. Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion. SSI, Inc. v. Cates , 2009 Ark. App. 763, 350 S.W.3d 421. In so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. Id. Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion. Id.
In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. Prock v. Bull Shoals Boat Landing , 2014 Ark. 93, 431 S.W.3d 858. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. Id. The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission. Id. When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. Wilson v. Smurfit Stone Container , 2009 Ark. App. 800, 373 S.W.3d 347. The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. Poulan Weed Eater v. Marshall , 79 Ark. App. 129, 84 S.W.3d 878 (2002). Finally, this court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have *461 reached the conclusions arrived at by the Commission. Prock , supra.
On appeal, appellant first contends that the Commission erred in finding that he was not permanently and totally disabled. Appellant's entitlement to permanent and total-disability benefits is controlled by Arkansas Code Annotated section 11-9-519(c) (Repl. 2012), which states that "in all other cases, permanent total disability shall be determined in accordance with the facts." Furthermore, "the burden of proof shall be on the employee to prove inability to earn any meaningful wage in the same or other employment." Ark. Code Ann. § 11-9-519(e)(2). We hold that the Commission's decision displays a substantial basis for denying appellant's claim for permanent and total-disability benefits. Appellant acknowledged in his testimony that he is able to drive, perform household chores, and cook for himself. Appellant graduated from high school, and after considering his physical limitations, two vocational-rehabilitation assessments identified potential jobs for appellant in the area. Although appellant is prohibited from returning to his previous jobs, two vocational-rehabilitation experts stated that there are jobs available for which appellant is qualified. We hold on this record that the Commission did not err in concluding that appellant failed to prove the inability to earn any meaningful wages as a result of his compensable injury. Thus, we must affirm the Commission's decision on this point.
Moving to the constitutionality arguments, we summarily reject them. Hopkins v. Harness Roofing, Inc. , 2015 Ark. App. 62, 454 S.W.3d 751. These same constitutionality arguments have previously been raised before our court, and we have repeatedly rejected them. See, e.g. , Id. ; Strother v. Lacroix Optical , 2013 Ark. App. 719, 2013 WL 6277646 ; Sykes v. King Ready Mix,Inc. , 2011 Ark. App. 271, 2011 WL 1425033 ; Long v. Wal-Mart Stores, Inc. , 98 Ark. App. 70, 250 S.W.3d 263 (2007). Thus, appellant's second point on appeal holds no merit.
Affirmed.