SLIP OPINION

Cite as 2015 Ark. App. 43

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-14-624

|  |  |
|---|---|
| | **Opinion Delivered** January 28, 2015 |
| ROGER REED | |
| APPELLANT | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [No. G208200] |
| V. | |
| TURNER INDUSTRIES and ACE AMERICAN INSURANCE COMPANY | |
| APPELLEES | AFFIRMED |

## LARRY D. VAUGHT, Judge

Appellant Roger Reed appeals from the opinion of the Arkansas Workers' Compensation Commission (Commission) denying his claim for benefits for an injury he received during his employment with appellee Turner Industries (Turner). On September 18, 2012, Reed fell as he descended a ladder and suffered significant injuries to his right ankle. He was taken to the hospital, where a urine sample tested positive for methamphetamine. The Commission denied Reed's claim based on Arkansas Code Annotated section 11-9-102(4)(B)(iv), finding that illegal drugs were in his system after the accident and that he failed to rebut the statutory presumption that the accident was substantially occasioned by the drugs. On appeal, Reed contends that (1) the Commission erred in applying section 11-9-102(4)(B)(iv); and (2) substantial evidence does not support the Commission's decision that he failed to rebut the statutory presumption. We affirm.

Reed testified that he worked as an electrician for thirty years and worked for Turner for approximately one year prior to his injury. On September 18, 2012, he arrived at work between 6:30 and 6:45 a.m., signed in, had coffee, and awaited his assignment. He said that he was told by his supervisor, Eddie Vance, to work on the "switch gear," which required multiple trips up and down a ladder. Reed worked in that capacity until lunch, eating with co-employee Jimmy Choate. Reed returned to work on the "switch gear," and around 2:45 p.m., fell from the ladder. He testified that he stepped on an angle iron[1] behind the ladder, which obstructed the ladder rung and caused his fall.

Reed learned at his deposition that his urine sample tested positive for methamphetamine.[2] He denied using methamphetamine around the time of the accident and denied symptoms of methamphetamine use, i.e., insomnia, dizziness, hyperactiveness, or loss of appetite. He also denied using his asthma inhaler or taking any other medicine before the accident. However, he conceded that (1) he had used methamphetamine eight to ten years prior; (2) he had pled guilty to sexual indecency with a minor in 2004 and that his drug use may have played a role in that incident; (3) he presented at the emergency room in 2004 for complaints of shortness of breath, dizziness, and chest pains and tested positive for methamphetamine and marijuana at that time; (4) he pled guilty in 2007 to possession of drug paraphernalia with intent to manufacture methamphetamine; and (5) he sought medical treatment in June 2012 for injuries to his forehead that he received when he and his son were wrestling. Reed agreed that someone

---

[1]Reed testified that an angle iron is shaped like an "L" and offers support for a ladder.

[2]Reed also tested positive for morphine; however, the record indicates that Reed was prescribed morphine for pain at the hospital after his September 18, 2012 fall.

using methamphetamine should not be around a construction site because it could increase the chances of a misstep or fall from a ladder.

Reed's mother, Linda Lawrence, testified that Reed and his son lived with her. She said that Reed went to drug rehabilitation in 2004 and that she did not think that he had used drugs since that time. She said that she recognized the symptoms of drug use and that Reed did not exhibit those symptoms around the time of the accident.

Choate testified that he worked with Reed the day the accident occurred. He said that he had never seen Reed use drugs and that he did not show any signs of being fidgety, violent, or hyperactive that day. Choate said that he ate lunch with Reed and never saw him leave the job site. Choate stated that the angle iron was about chest high and about four inches behind the rung. While he did not use the ladder in question, Choate added that he almost fell off another ladder when he caught his foot on an angle iron.

Vance, Reed's supervisor, testified that he had taken an in-house class on drug use and that it was his job to recognize intoxication at work. He said that if he believed that one of his employees was under the influence, he would remove him from work and request a drug test. Vance further said that he had never suspected that Reed was under the influence of drugs and had never requested that he take a drug test. On the day of the fall, Vance said that he and Reed had been working together on the "switch gear" and that Reed had no problems. Vance also said that Reed did not seem jittery or under the influence of drugs. Vance added that each of them had been successfully climbing up and down the ladder and that he saw no problems with the ladder.

William Huyck, safety manager for Evergreen Packaging (the company for which Turner was performing electrical work), testified that he inspected the ladder in question. He said that it was secured by an angle iron that was attached to duct work. He said that the angle iron was four and three-quarter inches behind the rung, which would have given Reed sufficient room to place the ball of his foot on the rung. It was Huyck's opinion that the angle iron did not cause Reed's fall. He added that there had been no other safety issues with or complaints about the ladder and that the ladder was not modified after Reed's fall.

Dr. Munir Khalid-Abasi testified that the laboratory cutoff for methamphetamine is 500 ng/ml, and Reed's test results showed 21,861 ng/ml methamphetamine. After receiving the results, the doctor contacted Reed to confirm what medications he was taking. Reed reported that he had prescriptions for Albuterol and another asthma inhaler but had not taken them. Dr. Khalid-Abasi said that the positive methamphetamine result would not have been caused by either of those medications.

Dr. Khalid-Abasi stated that there are two types of methamphetamine—one type is legal, is found in certain medications (a Parkinson's disease medication, a nasal vapo-inhaler, Adderall, Vyvanse, and Zydrex), and might cause a false-positive result. The other type of methamphetamine is illegal. He testified that the laboratory did not determine which of the two types of methamphetamine were found in Reed's sample. However, Dr. Khalid-Abasi discounted the possibility of a false-positive result in this case because Reed did not report taking any of the medications that contain the legal methamphetamine. The doctor testified that he could not opine as to when Reed consumed the methamphetamine. And while the doctor

acknowledged the high levels of methamphetamine in Reed's sample, he did not opine that Reed was impaired. Finally, Dr. Khalid-Abasi stated that someone taking methamphetamine was at increased risk for accidents, including a misstep on a ladder.

A toxicologist from Quest Diagnostic Laboratory, Mark Wuest, testified about the procedures used to test Reed's sample and the results of same. While he confirmed the positive test results and amounts, he could not state when the drug was ingested or whether Reed was intoxicated.

After concluding that the presence of methamphetamine in Reed's system triggered the statutory presumption that his accident was substantially occasioned by the use of the illegal drug, the administrative law judge (ALJ) concluded that Reed failed to rebut the presumption. The ALJ discounted the testimony of Reed, Vance, Choate, and Lawrence because expert testimony showed that Reed's test results showed a significant level of methamphetamine in his system. The ALJ specifically found that Reed was not a credible witness, citing his past drug use and criminal conviction for intent to manufacture methamphetamine. The ALJ also found that there was no evidence that Reed ingested other medicine that would have caused a false-positive test result.

On appeal to the Commission, Reed argued that section 11-9-102(4)(B)(iv) was inapplicable because testing failed to differentiate between illegal and legal methamphetamine; therefore, there was no evidence that the methamphetamine in Reed's system was illegal. The Commission rejected this argument, finding the testimony of Dr. Khalid-Abasi and Wuest credible. Accordingly, the Commission applied section 11-9-102(4)(B)(iv), which triggered the

rebuttable presumption that illegal drugs substantially occasioned the accidental injury. The Commission next found that Reed failed to rebut the presumption. While Reed claimed that his accident was caused by the angle iron, the Commission disagreed. It found that Vance—who testified that he knew of no unsafe conditions involving the ladder and did not consider the ladder unsafe—was more credible than Reed. The Commission further found that Huyck corroborated Vance's testimony, adding that there had been no reports that the ladder was unsafe and the ladder had not been modified since Reed's accident. The Commission then cited Dr. Khalid-Abasi's testimony that Reed had a significant level of methamphetamine in his system at the time of the accident and that the presence of methamphetamine greatly increased the probability of misstepping or slipping off a ladder. This appeal followed.

When the Commission denies coverage because the claimant failed to meet his burden of proof, the substantial-evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for denial of relief. *Edmisten v. Bull Shoals Landing*, 2014 Ark. 89, at 10–11, 432 S.W.3d 25, 32. Substantial evidence exists only if reasonable minds could have reached the same conclusion without resort to speculation or conjecture. *Id.* at 11, 432 S.W.3d at 32. This court will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id.*, 432 S.W.3d at 32.

At the heart of this case is Arkansas Code Annotated section 11-9-102(4)(B)(iv)(*a*) (Repl. 2012), which provides that a compensable injury does not include an injury where the accident was substantially occasioned by illegal drugs. Under the statute, the presence of illegal drugs

creates a rebuttable presumption that the injury or accident was substantially occasioned by the use of illegal drugs. Ark. Code Ann. § 11-9-102(4)(B)(iv)(*b*). An employee shall not be entitled to compensation unless it is proved by a preponderance of the evidence that the illegal drugs did not substantially occasion the injury or accident. Ark. Code Ann. § 11-9-102(4)(B)(iv)(*d*). In *ERC Contractor Yard & Sales v. Robertson*, our supreme court held that the plain and ordinary meaning of the phrase "substantially occasioned" required that there be a direct causal link between the use of alcohol (or illegal drugs) and the injury in order for the injury to be noncompensable. 335 Ark. 63, 71, 977 S.W.2d 212, 216 (1998). The question of whether an employee has overcome the presumption is a question of fact for the Commission. *Edmisten*, 2014 Ark. 89, at 10, 432 S.W.3d at 32.

Reed first argues that section 11-9-102(4)(B)(iv) does not apply because Turner failed to establish the presence of *illegal* drugs in his system at the time of his injury. He does not dispute that the test results revealed the presence of methamphetamine; however, he argues that no testing was performed to determine whether legal or illegal methamphetamine was in his system. He maintains that because testing did not confirm that illegal methamphetamine was in his system, the rebuttable presumption did not apply.

We disagree and hold that substantial evidence supports the Commission's rejection of this argument because there was no evidence that Reed consumed the types of medication that contain legal methamphetamine. The doctor testified that Reed reported that he had not taken any medication prior to his accident, and Reed confirmed this:

> Q: I want to ask you, at the time of the injury, you were not taking any prescription meds?

> A:     Absolutely nothing, not even a Tylenol, nothing.
>
> Q:     And you had not used your [asthma] inhaler?
>
> A:     No, sir.

Therefore, on this record, there is no evidence that Reed ingested any of the medicines that contain legal methamphetamine and might cause a false-positive result. Therefore, we hold that substantial evidence supports the Commission's finding that the statutory presumption was triggered. Ark. Code Ann. § 11-9-102(4)(B)(iv)(*b*).

Reed next argues that substantial evidence does not support the Commission's finding that he failed to rebut the statutory presumption. He relies on two recent supreme court cases: *Edmisten*, *supra*, and *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858. Edmisten and Prock suffered injuries in an explosion that occurred when they worked together to cut off the top of a barrel with an acetylene torch. After the accident, both Edmisten and Prock tested positive for marijuana. The Commission found that Edmisten and Prock failed to rebut the presumption that their injuries were substantially occasioned by the use of marijuana. The supreme court reversed, holding that substantial evidence failed to support the Commission's decisions where the evidence included Edmisten's and Prock's denial of drug use prior to the accident; the testimony of two co-workers who did not think that Edmisten and Prock were impaired on the day in question; and evidence that it was the habit of Edmisten and Prock to use a torch to cut the tops off barrels. *Edmisten*, 2014 Ark. 89, at 13–14, 432 S.W.3d at 33; *Prock*, 2014 Ark. 93, at 16, 431 S.W.3d at 868. Ultimately, the supreme court held that Edmisten and Prock proved that there was no direct causal link between their marijuana use and the accident.

*Edmisten*, 2014 Ark. 89, at 12, 432 S.W.3d at 33–34; *Prock*, 2014 Ark. 93, at 17, 431 S.W.3d at 869.

Citing *Edmisten* and *Prock*, Reed argues that substantial evidence likewise fails to support the Commission's decision that he failed to rebut the presumption of a direct causal link between the methamphetamine in his system and his accident. He cites his denial of drug use prior to the accident, along with the testimony of his mother, Choate, and Vance, all of whom testified that Reed did not appear impaired on the day of the accident. He claims that the Commission instead based its decision on his history of drug use.

While the Commission did refer to Reed's drug-use history in its opinion, this was not the basis for its finding that Reed failed to rebut the statutory presumption. Instead, the Commission properly focused on causation and found that Reed failed to prove that the angle iron behind the ladder caused his fall. The Commission placed great weight on the testimony of Vance and Huyck, who both said that there was no evidence that anyone else fell from that ladder; no other complaints had been made about the ladder; the ladder was not modified after Reed's fall; and the angle iron was attached in the proper place. Based on this evidence, the Commission concluded that the ladder was not unsafe and was not the cause of Reed's fall as he claimed.[3] Substantial evidence supports these findings.

Reed's reliance on *Edmisten* and *Prock* is misplaced. In *Edmisten* and *Prock*, the evidence demonstrated that the direct cause of the accident was Edmisten's and Prock's habitual use of

---

[3]In finding against Reed, the Commission acknowledged Choate's testimony that he had almost fallen from a ladder because of an allegedly unsafe angle iron. However, the Commission noted that Choate had not used the ladder that Reed claimed was unsafe.

a torch to cut the top off of a barrel that once contained a flammable substance. Here, the only evidence in support of Reed's claim that the angle iron caused his fall from the ladder is his own testimony. And the Commission found that on this issue, Reed's testimony carried less weight than that of Vance and Huyck, who both testified that the ladder was safe. Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Prock*, 2014 Ark. 93, at 12–13, 431 S.W.3d at 867. When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Id.* at 13, 431 S.W.3d at 867.

After concluding that the ladder was safe, the Commission found that there was a direct causal link between the methamphetamine in Reed's system and his fall from the ladder. This conclusion is also supported by substantial evidence. Dr. Khalid-Abasi, whom the Commission found to be a credible witness, testified about the significant amount of methamphetamine in Reed's system at the time of his accident and that the presence of methamphetamine greatly increased the probability of misstepping or slipping from a ladder. Even Reed agreed that methamphetamine consumption increased a person's chances of misstepping or falling off a ladder.

In sum, medical testing demonstrated that an illegal drug was in Reed's system when he fell from the ladder. This triggered the presumption that Reed's accident was substantially occasioned by the use of the illegal drug. We affirm the Commission's finding that Reed failed to rebut the presumption because substantial evidence demonstrated that the ladder was not unsafe and did not cause Reed's fall.

Affirmed.

WHITEAKER and HOOFMAN, JJ., agree.

*J.R. Baber, M.D., J.D.*; and *Robert James*, for appellant.
*Frye Law Firm, P.A.*, by: *William C. Frye*, for appellee.