
SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV
No. CV-16-1055

| | |
|---|---|
| JUAN PINEDA | **Opinion Delivered:** May 31, 2017 |
| APPELLANT | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G001337] |
| V. | |
| MANPOWER INTERNATIONAL, INC.; NEW HAMPSHIRE INSURANCE COMPANY; SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.; DEATH & PERMANENT TOTAL DISABILITY TRUST FUND; AND WELSPUN PIPES, INC., ET AL. | |
| | AFFIRMED |
| APPELLEES | |

---

## RAYMOND R. ABRAMSON, Judge

Appellant Juan Pineda appeals from the Arkansas Workers' Compensation Commission's (the Commission) October 16, 2016 opinion affirming and adopting the December 22, 2015 opinion of the administrative law judge (ALJ). We affirm.

An understanding of the procedural history of the case is necessary to begin. Pineda filed a claim for medical and indemnity benefits based on severe injuries that he received to his back, right upper extremity, hips, and lower extremities on February 6, 2010. Pineda settled his workers'-compensation claim with Manpower, Inc., by a joint petition. A joint-petition hearing was held on July 25, 2013, and ALJ Barbara Webb approved a joint-petition

filed by Pineda, and Manpower, Inc., and approved by the Death and Permanent Total Disability Trust Fund to resolve Pineda's workers'-compensation claim arising out of the injury that occurred on February 6, 2010. The joint-petition order was also dated July 25, 2013.

On February 1, 2013, several months prior to the joint-petition order, Pineda filed a complaint in the Pulaski County Circuit Court against Welspun Pipes, Inc., Welspun Tubular, LLC, Saleem Sawar, Debasish Bhowmick, and Martin Cain. Pineda asserted a claim for negligence arising from his work-related injury at Welspun. Welspun, Sawar, Bhowmick, and Cain affirmatively pled exclusivity of workers' compensation as a bar to Pineda's recovery.[1] On May 12, 2014, the circuit court held that the Commission had exclusive, original jurisdiction to determine whether Welspun was Pineda's employer and whether Welspun, Sawar, Bhowmick, and Cain were therefore immune from suit. By doing so, the circuit court granted the parties leave to pursue with the Commission the issue of Pineda's employment.

On May 13, 2014, Welspun Pipes, Inc., and Welspun Tubular, LLC, represented by the same counsel, requested a hearing to determine whether Pineda was its employee at the time of his injury. A prehearing order was entered by ALJ Chandra Black on September 16, 2014, following a prehearing telephone conference. A hearing was held on October 14,

---

[1]In the brief filed by appellees—Welspun Pipes, Inc., Welspun Tubular, LLC, Saleem Sawar, Debasish Bhowmick, and Martin Cain—Welspun Pipes, Inc., and Welspun Tubular, LLC are collectively referenced throughout as "Welspun," and they maintain that Saleem Sawar, Debasish Bhowmick, and Martin Cain, as supervisory employees, are entitled to the same protection as Welspun. *Lewis v. Indus. Heating & Plumbing*, 290 Ark. 291, 293, 718 S.W.2d 941, 942 (1986).

2015. The ALJ accepted the stipulations agreed upon by the parties. The only live testimony received was from Martin Cain. Pineda's deposition was also offered and received as an exhibit.

On December 22, 2015, ALJ Black filed an opinion concluding that the Commission had jurisdiction and that Welspun is protected by the exclusive-remedy provision of Arkansas Code Annotated section 11-9-105 (Repl. 2012). Pineda appealed the decision to the Commission.

On October 16, 2016, the Commission entered an opinion and order affirming and adopting the decision of the ALJ. The Commission restated the findings that the Arkansas Workers' Compensation Commission has jurisdiction; that the proposed stipulations are hereby accepted as fact; that Welspun is protected by the exclusive-remedy provision of Arkansas Code Annotated section 11-9-105; and that the dual-employment doctrine applies in this matter, thereby resulting in the claimant's being jointly employed by Welspun and Manpower at the time of his compensable accident of February 6, 2010. This appeal follows.

On appeal, Pineda argues the following three points: (1) pursuant to Arkansas Code Annotated section 11-9-805, the Commission lost jurisdiction of his workers'-compensation claim upon the entry of the joint-petition order; (2) Welspun Tubular, LLC, has failed to establish it was his employer, dual or otherwise; (3) even as a potential dual employer, Welspun Pipes, Inc., failed in its obligation to provide workers'-compensation coverage and benefits for him, which negates its special-employer privilege of exclusive-remedy protection.

Pineda was injured while working at the Welspun plant. Pineda initially applied for a job with Manpower, a temporary-employment agency, to work at Welspun. Manpower interviewed and hired Pineda before it assigned him to work at Welspun. Manpower maintained an office on Welspun's facilities near the Welspun plant. Manpower recruited, screened, and hired employees to work only for Welspun; it did not supply employees to any other company from its Little Rock, Arkansas, office.

The day Pineda was hired, he completed a Welspun safety orientation. The safety indoctrination was taught by a Welspun employee. Pineda was taken into the Welspun plant and received training from Welspun. Pineda started work the following day and went directly into the Welspun plant. He clocked in and clocked out at the Welspun plant. He reported to his Welspun supervisor, and Welspun assigned him to various jobs in the plant depending on where he was needed. Welspun reimbursed Manpower for Pineda's pay plus a premium for the services Manpower provided. Pineda would return to the Manpower office only to pick up his paycheck.

On February 6, 2010, Pineda went into the Welspun plant, and his supervisor sent him to the shipping area of the plant. Welspun maintains that he was under its direction and control. He was working for, supervised by, and under the sole direction of Welspun at the time of his injury. The staffing-services agreement between Manpower and Welspun Pipes was controlling at the time of Pineda's injury. Pursuant to the agreement, Manpower agreed that after a proper screening, it would provide employees to Welspun. Manpower also agreed to pay the Welspun employees their wages and benefits. Welspun agreed to supervise and control the work, premises, processes, and systems to be performed by the employees.

SLIP OPINION

All the work done by Manpower's temporary employees was work for Welspun. Welspun maintained the right to control their work.

Pineda's first point on appeal is that pursuant to Arkansas Code Annotated section 11-9-805, the Commission lost jurisdiction of his workers'-compensation claim upon the entry of the joint-petition order. The statute provides:

> (a) Upon petition filed by the employer or carrier and the injured employee requesting that a final settlement be had between the parties, the Workers' Compensation Commission shall hear the petition and take testimony and make investigations as may be necessary to determine whether a final settlement should be had.
> (b)(1) If the commission decides it is for the best interests of the claimant that a final award be made, it may order an award that shall be final as to the rights of all parties to the petition.
> (2) Thereafter, the commission shall not have jurisdiction over any claim for the same injury or any results arising from it.
> (c) If an employee has returned to work or agreed to return to work, the commission shall not approve a joint petition which has allotted moneys for vocational rehabilitation or any indemnity benefits in excess of that payable as an anatomical impairment as established by objective and measurable findings.
> (d) If the commission denies the petition, the denial shall be without prejudice to either party.
> (e) No appeal shall lie from an order or award denying a joint petition.

Ark. Code Ann. § 11-9-805.

However, Pineda's argument is misplaced. He is correct in asserting that a joint-petition settlement prevents the Commission from exercising jurisdiction in cases where there is an additional claim or any results arising from the injury that was settled. *See Sayre v. State of Ark. Second Injury Fund*, 12 Ark. App. 238, 674 S.W.2d 941 (1984). However, in this case, Welspun is not seeking a hearing on the merits of Pineda's claim or a determination on any of the results of his claimed injuries. The only issue before the Commission was whether Welspun was Pineda's special employer at the time of his injury and therefore

immune from suit. As a result, Arkansas Code Annotated section 11-9-805 is inapplicable. Because the application of the dual-employment doctrine presents issues of fact, the Commission has exclusive, original jurisdiction to determine whether Welspun is therefore immune from suit. *Coonrod v. Seay*, 367 Ark. 437, 441, 241 S.W.3d 252, 255–56 (2006). When a party to a lawsuit raises a question of whether a person enjoys immunity as an employer under the Workers' Compensation Act, the Commission must first decide the issue. *Reynolds Metal Co. v. Circuit Court of Clark Cty.*, 2013 Ark. 287, at 4, 428 S.W.3d 506, 509.

In the present action, the Commission had to exercise its jurisdiction to determine the issue of Pineda's dual employment because the Commission has exclusive jurisdiction to decide whether an employee-employer relationship exists. *See Johnson v. Bonds Fertilizer, Inc.*, 375 Ark. 224, 227, 289 S.W.3d 431, 433 (2008). Welspun sought a finding on whether an employee-employer relationship existed between Pineda and Welspun at the time of the subject incident. Only the Commission has jurisdiction to make this determination; accordingly, we affirm the Commission's decision on Pineda's first point on appeal. The Commission correctly concluded that the joint-petition settlement did not deprive it of its jurisdiction to determine whether an employee-employer relationship existed between Pineda and Welspun because Welspun was not a party to the joint-petition settlement and because the Commission has exclusive, original jurisdiction to determine the employee-employer relationship.

Pineda's second point is that intervenor Welspun Tubular, LLC, has failed to establish it was an employer, dual or otherwise. Welspun argues that substantial evidence supports

SLIP OPINION

the Commission's determination that the dual-employment doctrine applies and protects Welspun from tort liability.

The issue on appeal is not whether there is evidence that could support a different finding. *Minn. Mining & Mfg. v. Baker*, 337 Ark. 94, 98, 989 S.W.2d 151, 153–54 (1999). Rather, the substantial-evidence standard of review requires us to affirm if the Commission's opinion displays a substantial basis for its decision. *Reed v. Turner Indus.*, 2015 Ark. App. 43, at 6, 454 S.W.3d 237, 240. We view the evidence in the light most favorable to the Commission's decision and affirm the decision if it is supported by substantial evidence. *Leach v. Cooper Tire & Rubber Co.*, 2011 Ark. App. 571. Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm. *Id.*

Credibility questions and the weight to be given to witness testimony are within the Commission's exclusive province. *Pack v. Little Rock Convention Ctr.*, 2013 Ark. 186, 427 S.W.3d 586. When there are contradictions in the evidence, it is within the province of the Commission to reconcile evidence and determine the facts. *Id.* When the Commission affirms and adopts the ALJ's findings, as it did here, then we consider the ALJ's opinion and the Commission's decision in tandem. *Hawley v. First Sec. Bancorp*, 2011 Ark. App. 538, 385 S.W.3d 388.

In this case, both Welspun Pipes, Inc., and Welspun Tubular, LLC, sought to intervene and requested a determination that each company was a "dual employer" of Pineda and therefore protected from a third-party civil suit. Pineda argues that because the

staffing-services agreement, introduced without objection, indicates that only Welspun Pipes, Inc., was a party to the contract with Manpower, Inc., then Welspun Tubular, LLC, is not protected.

It is undisputed that there is no written agreement between Manpower, Inc., and Welspun Tubular, LLC. Therefore, Pineda argues, there is no contractual agreement for Welspun Tubular, LLC, to seek shelter from the civil suit.

In *National Union Fire Insurance v. Tri-State Iron & Metal*, 323 Ark. 258, 261, 914 S.W.2d 301, 302 (1996), our supreme court described the dual–employment doctrine:

When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if

(a) The employee has made a contract for hire, express or implied, with the special employer;
(b) The work being done is essentially that of the special employer; and
(c) The special employer has the right to control the details of the work.

Pineda does not contend that the three elements for dual employment have not been met. Instead, he argues that Welspun Tubular, LLC, is a separate entity from Welspun, Pipes, Inc., and that dual employment does not apply to Welspun Tubular. However, Pineda fails to identify how substantial evidence does not support a finding that it was nonetheless a special employer. Before the hearing, Pineda never raised an issue that there was any distinction between the two Welspun entities.

At the hearing, Cain was the only witness to testify. Cain, who had worked for Welspun for approximately eight years, performed employment duties as Health Safety Environment (HSE) Director and facilities manager. In that position, he directed all the safety and environmental issues of the organization and all the facility's management.

8

Pineda's counsel elicited testimony from Cain regarding the differences between Welspun Pipes, Inc., and Welspun Tubular, LLC.[2] Cain testified that they are one and the same. Cain stated that he believes that there may have been a name change at some point, but otherwise there is no difference between Welspun Pipes, Inc., and Welspun Tubular, LLC. He maintained that the two are the same company, although they go by different names. According to Cain, they are the "same facility, same management, same everything, and same company."

We reiterate that the only evidence presented to the Commission on this issue was the testimony of Cain. Pineda offered no evidence to support a contention that these two Welspun entities should be treated as anything other than the Welspun company where Pineda worked. While Pineda's argument that the staffing-services agreement is only between Manpower and Welspun Pipes, Inc., is accurate, he does not develop it to show how either Welspun entity failed to meet any of the dual-employment requirements.

All the testimony provided by Pineda and Cain regarding the relationship between Pineda, Manpower, and Welspun applies to both Welspun Pipes, Inc., and Welspun Tubular, LLC. Cain, when asked about his paychecks, testified that they were from

---

[2]Counsel for Welspun objected to this line of questioning, citing that the contention that the two entities were separate was not made in any pleading before the hearing. It was not in the prehearing order or referenced in the claimant's prehearing-questionnaire response. Counsel argued that "and so to make [that argument] a minute before we start the hearing is not only unfair, it is certainly not something that we were prepared to address."

SLIP OPINION

"Welspun" and could not distinguish whether they were from either Welspun Tubular or Welspun Pipes. When asked how the corporation is listed with the secretary of state's office, Cain testified that their attorneys looked, and that there is only one corporation.

Viewing the evidence in the light most favorable to the Commission's decision, we hold that substantial evidence supports its decision. As noted above, substantial evidence exists if reasonable minds could reach the Commission's conclusion, and here the only evidence presented was that the two Welspun companies are effectively the same. Reasonable minds certainly could reach the Commission's conclusion; therefore, we affirm on this point.

Pineda's final point on appeal is "even as a potential dual employer, Welspun Pipes, Inc., failed its obligations to provide workers' compensation coverage and benefits for him, which negates its special employer privilege of exclusive remedy protection." Welspun responds that substantial evidence supports that it secured the payment of workers' compensation and that it is therefore entitled to exclusive-remedy protection. Welspun secured workers'-compensation coverage for Pineda in its staffing-services agreement with Manpower. Welspun paid Manpower a premium for its services under the agreement, in which Manpower agreed to "provide workers' compensation insurance coverage for assigned employees" and to handle "workers' compensation claims involving assigned employees with respect to compensation that Manpower has agreed to pay."

No Arkansas court has required that the special employer have workers'-compensation coverage for the temporary employee other than the workers'-compensation coverage that the temporary-employment agency agreed to provide. Welspun also secured

workers'-compensation insurance through a workers'-compensation insurance carrier. The workers'-compensation insurance was in effect at the time of Pineda's injury. Our court recently held that an employer is required to prove only the existence of a workers'-compensation insurance policy for the exclusive remedy to apply. *Wilhelm v. Parsons*, 2016 Ark. App. 56, at 10, 481 S.W.3d 767, 774. The employer is not required to prove that the employee was actually covered under that policy. *Id.*

Here, Welspun had a workers'-compensation insurance policy in effect at the time of Pineda's injury. While Cain testified that he did not believe that Welspun had a workers'-compensation policy that would cover Pineda, that is not the relevant inquiry. The only germane question for a determination on exclusive remedy is whether Welspun had a workers'-compensation policy in effect at the time of the employee's injury. *Id.* at 12, 381 S.W.3d at 774. Substantial evidence supports that Welspun had such a policy. Because dual employment exists, and Welspun secured workers'-compensation insurance, the exclusive-remedy provisions apply to Welspun. As such, we affirm.

GRUBER, C.J., and GLOVER and HIXSON, JJ., agree.

VIRDEN and GLADWIN, JJ., dissent.

**ROBERT J. GLADWIN, Judge, dissenting.** I concur with the majority that the Commission retains jurisdiction to determine the dual-employment issue and that Welspun Pipes, Inc., is a dual employer of appellant. However, I dissent from the holding that substantial evidence supports the Commission's finding that Welspun Pipes, Inc., and Welspun Tubular, LLC, are a single entity. I would reverse the dual-employment finding as it relates to Welspun Tubular, LLC.

The issue on appeal is not whether there is evidence that could support a different finding. *Minn. Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999). Rather, the substantial-evidence standard of review requires this court to affirm if the Commission's opinion displays a substantial basis for its decision. *Reed v. Turner Indus.*, 2015 Ark. App. 43, 454 S.W.3d 237. As a result, the question for this court is singular and narrow in scope, whether the record contains substantial evidence to support the Commission's determination. If so, this court must affirm the Commission's decision. *See Wright v. Conway Freight*, 2014 Ark. App. 451, 441 S.W.3d 45. However, we heed the advice that "we must remain mindful that although we review the evidence in the light most favorable to the Commission's findings, our function on appeal is not merely to rubber stamp the Commission's decisions." *Sapp v. Phelps Trucking, Inc.*, 64 Ark. App. 221, 226, 984 S.W.2d 817, 820 (1998) (Neal, J., dissenting).

In this case, Welspun Pipes, Inc., and Welspun Tubular, LLC, sought to intervene and requested a determination that each company was a "dual employer" of appellant, and therefore, protected from a third-party civil suit. Prior to the hearing, Welspun's attorneys were asked to clarify which Welspun entity claimed to be the dual employer, and their response was that both entities were dual employers. However, the staffing-services agreement introduced without objection indicates that only Welspun Pipes, Inc., was a party to the contract with Manpower. This is significant with respect to Welspun Tubular, LLC. There is no written agreement between Manpower and Welspun Tubular, LLC, and therefore, no contractual agreement for the LLC to seek shelter from the civil–suit claim.

The intervenors' only witness, Martin Cain, testified that Welspun Tubular, LLC, "is the same company" as Welspun Pipes, Inc., but he was unable to testify exactly how it was the same. He explained that "it started out" as Welspun Pipes, Inc., and then somehow converted years later to Welspun Tubular, LLC. There was no documentation to support his comments. Corporations and limited liability companies are created and dissolved by statute. No one contests that there were two separate companies. In fact, the majority and the Commission completely ignore the fact that pleadings filed in this case by the "Welspun" attorneys acknowledge that they are separate entities. It defies basic legal principles that these two entities are the "same" company; they are not. Ark. Code Ann. §§ 4-27-101 et seq. (Repl. 2016); Ark. Code Ann. §§ 4-32-101 et seq. (Repl. 2016).

Finally, even the ALJ's prehearing order referred to only Welspun Pipes, Inc. In her opinion, the ALJ stated: "I realize the claimant attempted to make a distinction between Welspun Pipes and Welspun Tubular; however, he failed to present any evidence whatsoever demonstrating that these two entities are not one in the same."

The ALJ improperly shifted the burden of proof to the claimant on this issue. As stated earlier, the pleadings filed in this case admit that there are two Welspun entities—one a corporation and one a limited liability company. If they had merged, as seemingly suggested by Mr. Cain, prior to appellant's injury, there would have been no need for respondents to seek any type of exclusive-remedy protection for Welspun Pipes, Inc., from appellant's claim.

Mr. Cain only detracted further from the Welspun entities' argument when he also claimed that his own paycheck and his W-2 only said "Welspun" and did not contain his

company's full name. Welspun Tubular, LLC, has the burden of proving by substantial evidence that it was a dual employer of appellant—it cannot just simply keep referring to itself as "Welspun" and make it so.

In short, Welspun Tubular, LLC, has not shown any credible evidence that it was, in fact, an employer, dual or otherwise, with respect to appellant, or that it provided him with workers'-compensation insurance coverage. The evidence is to the contrary, and Welspun Tubular, LLC, has failed to meet its burden.

VIRDEN, J., joins.

*Bell & Boyd, PLLC*, by: *Michael W. Boyd*, for appellant.

*Mayton, Newkirk & Jones*, by: *Mike Stiles*, for appellees Manpower International, Inc., New Hampshire Insurance Company, and Sedgwick Claims Management Services, Inc.

*Friday, Eldredge & Clark, LLP*, by: *James M. Simpson*, *Guy Alton Wade*, and *Phillip M. Brick, Jr.*, for appellees Welspun Pipes, Inc., Welspun Tubular, LLC, Saleem Sawar, Debasish Bhowmick, and Martin Cain.