Kenneth S. Hixson, Judge, dissenting.
Six o'clock in the morning at the University of Arkansas for Medical Sciences (UAMS) surgical suite in Little Rock, Arkansas: The patient is in the pre-op holding room being prepped for surgery. Monitors and IVs are in place. The holding room is a buzz of activity. The pre-surgery plan is to administer a general anesthetic which will render the patient unconscious. The anesthesiologist comes up to the side of the patient's bed and introduces himself for the first time. In his hand is a clipboard containing the patient's medical records. While reviewing the records, the anesthesiologist confirms with the patient that he is having thumb surgery and then explains the risks of general anesthesia and its potential adverse effects. The anesthesiologist observes that the patient appears somewhat intoxicated. Perhaps as a part of the anesthesiologist's routine check list, or perhaps because the patient appeared somewhat intoxicated, the anesthesiologist asks the patient: "Have you ingested any drugs or illegal substances within the past 24 hours?" The patient responds, "yes," that "[I] smoked and injected 'go-fast' [methamphetamine] within the past twenty-four hours. " Based on this illegal-drug use information provided by the patient himself and the anesthesiologist's personal observation of the patient, the anesthesiologist makes the following time-sensitive and critical entry in the patient's medical records: "Patient states he smoked and injected 'go-fast' (methamphetamine) within the last 24 hours-he appears somewhat intoxicated in preop holding, ortho surgery has called this [surgery] emergency. " (Emphasis added.)
After hearing from the patient, himself, that he had ingested and smoked methamphetamine within the past twenty-four hours, and after personally observing that the patient appeared somewhat intoxicated in the pre-op room, the anesthesiologist is concerned with performing a general anesthetic and recommends changing the surgeon's pre-surgery anesthesiology plan from "general anesthetic" to the lower risk "regional" or local anesthetic with sedation. The anesthesiologist then discusses the discovery of the methamphetamine use and the somewhat intoxicated appearance of the patient with the surgeon. The surgeon agrees with the anesthesiologist to change the anesthesiology plan from general *741 to regional or local with sedation, and the anesthesiologist then relays this change-of-anesthesiology plan to the Certified Registered Nurse Anesthetist.
The surgery is completed uneventfully. The surgeon then dictates her official Surgery Report, and the Surgery Report contains the following pertinent information:
PREOPERATIVE DIAGNOSES: ... 2. Acute Methamphetamine use.
POSTOPERATIVE DIAGNOSES: ... 2. Acute Methamphetamine use.
....
[The patient] admits to doing methamphetamine within the last 24 hours to the anesthesiologist. He seems to be acutely intoxicated in our estimation related to that.... Due to the patient's history of acute methamphetamine use, the anesthesiologist was concerned about performing general anesthesia and so regional anesthesia was performed along with sedation. The patient tolerated this well. Therefore, regional anesthesia and sedation were administered by the anesthesiology team.
(Emphasis added.)
The patient was subsequently discharged from UAMS. The UAMS discharge report includes a final diagnosis of "Nondependent amphetamine or acting sympathomimetic abuse, unspecified" and a notation that UAMS "[p]rovided drug treatment options in Arkansas and Fort Smith area for patient."
At some point thereafter, the patient-now claimant Mark Norris-filed a workers'-compensation claim. In response, the employer contended that Norris's injury was not compensable because the accident was substantially occasioned by the presence of illegal drugs.[1]
At the hearing before the ALJ, the UAMS medical records were introduced into evidence. Norris testified, and the ALJ had the benefit of observing the claimant's demeanor during his testimony. As one would expect, Norris testified on direct that he did not use methamphetamine prior to the accident. However, Norris also testified that he "[didn't] remember" telling the anesthesiologist or any other person at the hospital that he had used methamphetamine the night before or that he had been using recreational drugs.
On cross-examination, Norris admitted that he had been a methamphetamine user. Norris did testify that he was at a party a few nights before the accident where methamphetamine was in use and that perhaps, he was somehow exposed to methamphetamine. Norris further admitted that he would take methamphetamine because it would "make [him] feel awake" and "go fast" and that he would feel the effects for six to nine hours. He additionally stated that he was supposed to drive the truck six hours to St. Louis the morning of the accident. When Norris was specifically asked if he used methamphetamine on the *742 evening prior to the accident in preparation for his six-hour trip to St. Louis, Norris responded that he did not think so:
Q So what you did on this particular evening, isn't it true, Mr. Norris, that you used some meth anticipating you were going to have a six-hour drive to St. Louis and you did it before you went to the Parks Farm to pick up the truck; isn't that true?
A No, I don't think so.
(Emphasis added.)
After the hearing, the ALJ denied benefits, finding that (1) "[t]he presence of methamphetamine in the claimant's system has created a rebuttable presumption that his injury was substantially occasioned by the use of drugs," and (2) "[t]he claimant has not proven, by a preponderance of the evidence, that drugs did not cause the June 4, 2015 injury to his left thumb." Norris appealed the ALJ's decision, and the Commission reversed the ALJ's decision and awarded Norris benefits. Pertinent to this dissent, the Commission specifically found the following:
In the present matter ... [t]he evidence does not demonstrate the presence of illegal drugs at the time of the [June 4, 2015] accidental injury.
....
As we have discussed, an Inpatient Record on June 4, 2015 averred, "Patient states he smoked and injected 'go fast' (methamphetamine) within the last 24 hours-he appears somewhat intoxicated in preop holding." Dr. Wyrick [the surgeon] echoed this unsubstantiated hearsay report , stating, "He admits to doing methamphetamine within the last 24 hours to the anesthesiologist. He seems to be acutely intoxicated in our estimation related to that." ... In the present matter, there is no probative evidence demonstrating that the claimant was intoxicated by methamphetamine at the time of the June 4, 2015 injury. We note that neither a urine specimen, blood sample, or hair follicle test was ever collected in order to support Dr. Wyrick's uncorroborated diagnosis of "Acute methamphetamine use."
... The claimant expressly denied having methamphetamine in his system at the time of the accident, and there is no substantive evidence of record contradicting the claimant's testimony other than hearsay notes entered at UAMS .
The Full Commission therefore finds, in accordance with Ark. Code Ann. § 11-9-102(4)(B)(iv)(b) (Repl. 2012), that the evidence does not demonstrate the presence of illegal drugs at the time of the June 4, 2015 accidental injury. Because the evidence does not demonstrate the presence of illegal drugs at the time of the compensable injury, the rebuttable presumption that the injury or accident was substantially occasioned by the use of illegal drugs was not created.
(Emphasis added.)
That brings us to this appeal. In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. Prock v. Bull Shoals Boat Landing , 2014 Ark. 93, 431 S.W.3d 858 (emphasis added). We reverse the Commission's decision only if we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. Id. That being said, I am not remotely convinced that fair-minded persons with the same facts before them could have reached the conclusions arrived at by the Commission. In fact, the Commission is wrong for multiple reasons.
*743 First, contrary to the findings by the Commission, the statements made by Norris to the hospital are NOT hearsay. Those statements are admissions by a party. "A statement is not hearsay if ... [t]he statement is offered against a party and is (i) his own statement." Ark. R. Evid. 801(d)(2). Furthermore, even if the statements were hearsay, they would be admissible under an exception to hearsay pursuant to Arkansas Rule of Evidence 803(4). Rule 803(4) states that "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are not excluded by the hearsay rule. The rationale for this hearsay exception should be obvious. The basis for this hearsay exception is the patient's strong motivation to be truthful in giving statements for diagnosis and treatment. Carton v. Missouri Pac. R. Co. , 303 Ark. 568, 798 S.W.2d 674 (1990). This is not rocket science: Was Norris's statement to the anesthesiologist that he smoked and ingested methamphetamine within the past twenty-four hours made for medical treatment? Yes. Did the claimant have a strong motivation in being truthful in making that statement? Yes; otherwise, the anesthesiologist might not be able to wake him up. Clearly, the statements made by Norris contained in the UAMS medical records were admissible, substantive (and probative) evidence. That is an elementary error of law, which was clearly prejudicial to the employer/appellant.
Because the statements made by Norris were not hearsay, substantial evidence does not support the following findings made by the Commission: (1) "In the present matter, there is no probative evidence demonstrating that the claimant was intoxicated by methamphetamine at the time of the June 4, 2015 injury"; (2) "In the present matter, the evidence does not demonstrate the presence of any illegal drugs in the claimant's system at the time of the June 4, 2015 accidental injury"; (3) "There is no physical evidence of record corroborating Dr. Wyrick's diagnosis of acute methamphetamine use"; and (4) "[T]here is no substantive evidence of record contradicting the claimant's testimony other than hearsay notes entered at UAMS." While I agree it is within the Commission's province to review the evidence, the Commission may not arbitrarily disregard the testimony of any witness, and likewise, the Commission may not arbitrarily disregard other evidence submitted in support of a claim. Edmisten v. Bull Shoals Landing , 2014 Ark. 89, 432 S.W.3d 25. Here, it is clear that the Commission arbitrarily disregarded probative medical records documenting Norris's admission that he had smoked and injected methamphetamine within the past twenty-four hours, which were admissible.
Second, the Commission erred in requiring the employer/appellant to prove that Norris was under the influence of drugs at the time of the injury. That is the whole point of the statutory presumption. The employer does not have to prove intoxication; the employer must prove only the presence of drugs in the claimant's system. Our case law is clear that "presence" is not required to be established by a formal scientific test; it may be established by a preponderance of credible other evidence. Weld Rite , supra. If the Commission believes that the law should be changed and that the statute should require urine-specimen, blood-sample, or hair-follicle tests to prove the presence of illegal drugs as it specifically noted and relied on the absence thereof in its opinion, it should contact the legislature.
Here, admissible, probative medical documentation clearly indicated that Norris *744 admitted to his treating physicians immediately before undergoing surgery that he had "smoked and injected 'go fast' (methamphetamine) within the last 24 hours." Furthermore, based on those admissions, the anesthesiologist was unable to administer general anesthesia during appellee's surgery and instead administered only regional anesthesia along with sedation. This documentation is admissible and is sufficient to trigger the statutory presumption. Once the statutory presumption was triggered, it was up to Norris to overcome that presumption, which is a question of fact for the Commission. Edmisten , supra. The Commission's error is evident throughout its opinion. One such example is this: "In the present matter, there is no probative evidence demonstrating that the claimant was intoxicated by methamphetamine at the time of the June 4, 2015 injury." Thus, the Commission has completely missed the target, and substantial evidence does not support the Commission's finding that the statutory presumption was not triggered under the circumstances of this case. Reed , supra.
That brings me to my last point. The majority claims that we cannot reweigh the evidence, as it is within the Commission's province to reconcile conflicting evidence and determine the facts. Wilson v. Smurfit Stone Container , 2009 Ark. App. 800, 373 S.W.3d 347. It is true that appellate courts defer to the Commission on issues involving the weight of evidence and the credibility of witnesses. Edmisten , supra. However, while the Commission may be insulated to a certain degree, it is not so insulated as to render appellate review meaningless. Id.
This brings me to the real point of contention between the majority and this dissent. We do not review the record to determine if there is any evidence to support the Commission's opinion. We review the record for substantial evidence to support the Commission's opinion. The majority takes the position that we are foreclosed and precluded from "reviewing" or "reweighing" the evidence. I disagree. Our mandate is to review the record for substantial evidence. Whether one calls it reviewing or reweighing, our mandate demands that we search the record for substantial evidence. If, as the majority states, our standard of review forecloses and precludes us from a meaningful review of the evidence to correct such a flagrant wrong, as is present in this case, then our standard of review has insidiously run amok and has effectively emasculated appellate review of workers'-compensation cases. To that, I cannot agree.
Here, after we review, analyze, examine, inspect, survey, study, scrutinize, look over, reweigh, or whatever we do to the evidence, there is no doubt whatsoever in my mind that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission.
For simplicity's sake for all concerned, I will refer to our search of the record as "looking over." As we look over the evidence, what admissible evidence supports the conclusion that Norris had the presence of methamphetamine in his system: Within hours of the injury, two nurses made entries that the claimant uses drugs; the intake records indicate that the patient is acting "bizarre" and denies suicidal or homicidal ideations; the claimant admits to the anesthesiologist that he has smoked and ingested methamphetamine within the past 24 hours; the anesthesiologist observed the claimant acting "somewhat intoxicated" in pre-op; the anesthesiologist and the surgeon state just prior to surgery that the patient "seems acutely intoxicated related to [methamphetamine]"; and the anesthesiologist and the surgeon change *745 the anesthesia plan from general to regional because the anesthesiologist "was concerned" about performing general anesthesia. On the other hand, what evidence is in the record to support the claimant? First, the claimant made a self-serving statement denying that he used methamphetamine prior to the accident. However, then, the claimant admitted using methamphetamine regularly; he admitted that methamphetamine makes him go fast for six to nine hours; and most importantly, the claimant did NOT deny telling the anesthesiologist that he had smoked and ingested methamphetamine within the last 24 hours! When asked on cross-examination, the claimant testified that he did not think he took methamphetamine prior to the accident and that he could not remember what he told the anesthesiologist. Where is the substantial evidence to support the Commission's opinion?
Having said all of that, I do not express any opinion as to whether Norris ultimately overcame the presumption. That is a question of fact for the Commission to determine. Edmisten , supra. Instead, I conclude that the Commission's decision that the statutory presumption was not triggered is not supported by substantial evidence, as I am not convinced that fair-minded persons with the same facts before them could have reached the conclusions arrived at by the Commission. Accordingly, I would reverse the decision of the Commission and remand for the Commission to render findings of fact on whether Norris rebutted the presumption that his accident or injury was substantially occasioned by his use of methamphetamine. See Gentry v. Ark. Oil Field Servs., Inc. , 2011 Ark. App. 306, 2011 WL 1571831.
Virden, J., joins in this dissent.

Arkansas Code Annotated section 11-9-102(4)(B)(iv)(a) (Repl. 2012), provides that a compensable injury does not include an injury where the accident was substantially occasioned by illegal drugs. See Reed v. Turner Indus. , 2015 Ark. App. 43, 454 S.W.3d 237. Under the statute, the presence of illegal drugs creates a rebuttable presumption that the injury or accident was substantially occasioned by the use of illegal drugs. Id. An employee shall not be entitled to compensation unless it is proved by a preponderance of the evidence that the illegal drugs did not substantially occasion the injury or accident. Id. In order for an accidental injury to be "substantially occasioned" by the use of illegal drugs or alcohol, there must be a direct causal link between the use of illegal drugs or alcohol and the injury sustained. Weld Rite, Inc. v. Dungan , 2012 Ark. App. 526, 423 S.W.3d 613.